The Executor of FANNY TRAPHAGEN, deceased.

*v.*

PETER VOORHEES.

1. No act or conduct on the part of a creditor, indicating an intention to release or forgive a debt, will operate as a release in equity unless it is entitled to the same effect at law.

2. But where a creditor, by a letter or other writing, plainly admits that he has released his debtor from the payment of a particular debt, the writing may furnish sufficient evidence of a release to justify a court in holding that the debt is discharged, though no formal release is produced.

3. A consideration sufficient to support a contract may be either a benefit accruing to the promissor, or a loss or disadvantage sustained by the promisee.

4. A very slight advantage to one party, or a trifling inconvenience to the other, will constitute a sufficient consideration to support a contract in a case free from fraud, imposition or mistake.

5. Where a person, standing in a confidential relation to another, makes a contract with such other, the burden of showing that the transaction was open, fair, voluntary and well understood is on the person who stood in the position of protector.

On final hearing on pleadings and proofs taken before the court.

*Mr. Gilbert Collins* and *Mr. Theodore Runyon,* for complainant.

*Mr. Henry A. Fluck* and *Mr. John N. Voorhees,* for defendant.

VAN FLEET, V. C.

This case has already been once decided. On the first hearing, the question mainly discussed was, whether a receipt, produced by the defendant, showing that the debt which is the subject of the controversy, had been paid, was an honest paper or not. The conclusion then reached, on that question, was in favor of the integrity of the receipt. It was also contended, on the first argument, that even if the receipt was found to be an honest

paper, it did not vindicate the defendant's right to the subject of the suit, but this ground of resistance to the defendant's claim was not very elaborately argued, and hence did not receive, when the case came to be considered, that degree of consideration which the argument, on a subsequent application for a rehearing, convinced me that it ought to receive. A rehearing was, in consequence, ordered, and the case has been fully re-argued on all the questions involved, and is now to be decided on the rehearing. A patient and thorough re-examination of the case, with the aid of the additional light which the re-argument has furnished has led me to the same conclusion which I originally reached. This conclusion may be erroneous, but if it is, my error is not the result of imperfect consideration, but of the infirmity of my judgment.

The controversy arises out of the following facts : Peter Voorhees gave his bond to Fanny Traphagen, dated March 31st, 1881, conditioned for the payment of $4,000, on the first of April, 1882, with interest. The payment of the bond was secured by a mortgage executed by Voorhees and his wife, on a farm in Somerset county. Fanny Traphagen died testate on the first day of October, 1885. At the time of her death, the bond and mortgage were in the possession of her counsel, together with her other securities. Shortly after the mortgagee's death, and when the bond and mortgage were produced for appraisement, the defendant claimed that the debt which they represented had been paid, and that he was entitled to have them surrendered to him. In support of his claim, he produced a receipt, dated April 2d, 1883, signed by the testatrix, admitting the payment of both principal and interest, and containing, at its end, these words; "bond to be cancelled after my death." The complainant refused to surrender the bond and mortgage. The defendant in March, 1884, conveyed the mortgaged premises to John Kuhl, subject to the mortgage, and Kuhl assumed its payment. The complainant, in July, 1886, brought this action to enforce the payment of the mortgage debt by a sale of the mortgaged premises. Kuhl afterwards filed a bill of interpleader and paid the mortgage-debt into court. Subsequently a decree was made, in that cause,

Traphagen v. Voorhees.

requiring the complainant and defendant to interplead and settle their conflicting claims to the money in court by proceeding with this suit to final decree. The question now to be decided is, which of these parties—the complainant or defendant—is entitled to the money in court.

The defendant's right rests on his receipt. That paper, in my judgment, unless its honesty or validity has been successfully impugned, constitutes sufficient evidence to establish the defendant's right. The paper admits that the mortgage-debt has been paid. This admission is made in words so plain that their meaning cannot be misunderstood. It is undisputed that the testatrix signed the paper. It seems to be settled that where a creditor says by a letter, not written to his debtor, but to a third person, that he has released his debtor from the payment of a particular debt, that such admission will, even after the death of the debtor, furnish sufficient evidence of a release, though no formal release is produced to justify the court in declaring that the debt is discharged. Lord Rosslyn so held in *Eden* v. *Smyth, 5 Ves. 341.* There it appeared that Mr. Smyth, the father-in-law of Sir Frederick Eden, two or three months before his death, wrote to Sir Frederick's mother, stating that he had released Sir Frederick from a debt of £1,000. Sir Frederick had given Mr. Smyth his bond for £1,000, which, at Mr. Smyth's death, remained in his possession. Mr. Smyth, by his will, gave Sir Frederick a legacy of £1,000. His executor refused to pay Sir Frederick his legacy, claiming that his debt discharged his legacy. Sir Frederick filed a bill to recover his legacy, and Lord Roslyn held that the debt was released, and that Sir Frederick was entitled to the payment of the legacy. In deciding the case, Lord Rosslyn said, that, if an action at law had been brought on the bond, and Sir Frederick had pleaded a release, it would not have been necessary for him, in order to maintain his plea, to have produced a formal release, but that the letter would have constituted sufficient evidence of a release to have destroyed the bond. The Master of the Rolls (Sir Richard Pepper Arden), in the subsquent case of *Reeves* v.

*Brymer, 6 Ves. 516,* approved the doctrine laid down by Lord Rosslyn in *Eden* v. *Smyth,* in all its length and breadth.

But the complainant assails both the honesty and validity of the receipt. First, he says that the proofs show that it has been altered in material respects since it was signed by the testatrix. His claim in this regard is, that, after it was signed by the testatrix, it was raised from $240 to $4,240, and also that an addition was made to it by adding the words, "bond to be cancelled after my death." He says, secondly, that if the receipt is an honest paper, it is without legal force, because, if it was intended to operate as a gift, the bond and mortgage not having been delivered, no title to them passed; or, if it was intended to operate as a contract to release or discharge the debt, it is a mere *nudum pactum,* because it is unsupported by a sufficient consideration to impart validity to it.

The charge of alteration imputes a high crime to the defendant. The body of the receipt is in his handwriting, and if it be true that it has been altered, there can be no doubt that forgery has been committed, and also that the defendant is the forger. But while this is so, the law is settled, that the complainant is not bound to prove the truth of his charge beyond a reasonable doubt, but merely by a fair preponderance of evidence. *Kane* v. *Hibernia Insurance Co. 10 Vr. 697.* The burden of proof, however, is on the complainant, and where, as in this case, the issue to be tried involves something more precious and important to one of the parties than a mere property right, it would seem to be a plain dictate of justice, that the court should, before pronouncing a judgment, which, while it does not convict a citizen of a high crime, yet puts a stigma upon him, which renders him more detestable than he would be if he had been convicted, require the truth of the charge to be proved by evidence of a very persuasive and convincing character. Equivocal, uncertain or conjectural evidence is clearly insufficient to support such a judgment.

There is no direct proof of alteration. Neither party has given any evidence respecting the origin or history of the receipt. The defendant offered to prove both by his own oath, but his

Traphagen v. Voorhees.

competency to give such evidence being objected to, the court was compelled to exclude it. The only proof in the case tending to support the charge of alteration, is that which the paper itself furnishes. There is nothing on its face showing alteration. It is free from erasure or interlineation; there is no difference in the ink or the style of penmanship; all of it appears to have been written at the same time, by the same hand, but it was very earnestly contended that the position which certain important words occupy in the receipt, shows that additions have been made to it since it was signed, so as to change it from a receipt for $240 of interest to a receipt for $4,240. To readily understand the accusation made against the defendant, it is necessary to have before the mind a copy of the receipt as it now stands, and also a copy of it as complainant contends it stood when the testatrix signed it. The following is a literal copy of it as it now appears:

"$4,240.                              "WHITE HOUSE, April 2d, '83.
"Received of Peter Voorhees Forty Two Hundred and forty dollars   Being one years interest and princapel on Bond and Mortgage which i hold on said Voorhees Farm at Two Bridges   Bond to be canceled after my death.
                                                "F TRAPHAGEN"

The following is a copy as the complainant contends the receipt stood when the testatrix signed it:

                                "WHITE HOUSE, April 2d, '83.
"Received of Peter Voorhees Two Hundred and forty dollars   Being one years interest on Bond and Mortgage which i hold on said Voorhees Farm at Two Bridges.                              "F. TRAPHAGEN."

The complainant insists that the court should find, as a fact proved, that the word "forty," and the words "and princapel" and "Bond to be canceled after my death," were added, after the testatrix signed the receipt, and without her knowledge. But there is not an atom of direct proof in the case, showing that the receipt was other or different, in any respect, when the testatrix signed it, from what it is now. The position of the words in the receipt, which the complainant insists show that it

has been altered, simply tend to show that the receipt may have
been so framed, when it was signed, as to render a fraudulent
alteration of it possible, but no court is at liberty to presume
because it may have been possible for a thing to have been done
fraudulently, that it was so done. The law is too benignant to
allow such a presumption to be made. Fraud is never presumed'
but must always be clearly proved. There is no proof of any
kind in the case which will, in my judgment, justify even a sus-
picion that the receipt is not now just in the condition it was
when the testatrix signed it. On the contrary, the proofs on the
part of the defendant indicate, quite clearly, not only that the
receipt is an honest paper, but that the testatrix executed it
understandingly, and with the design that it should operate as a
discharge of the mortgage debt, and thus compensate the defend-
ant for services which he had already rendered to her, and which
she desired he should continue to render in the future.

The testatrix was a maiden lady without relatives, at the time
of this transaction, nearer than nephews and nieces; she was
over eighty years of age at the time of her death ; for some years
before her death she had had no permanent home, but had
lived temporarily among her relatives and friends; she left an
estate of over $60,000, consisting principally of bonds and mort-
gages and two farms. The defendant, for more than ten years
prior to her death, had been her chief man of business. She
advised with him about her investments, and sometimes sent
him to examine and appraise land on which she had been asked
to make a loan ; he went with her when she visited her counsel,
and sometimes he visited her counsel, on her business, alone;
her farms were in the possession of tenants, and the defendant
visited the farms at times, to see the condition of the crops, and
also made settlements with her tenants for her ; she sent for him
whenever she desired to see him, and he usually went to her
whenever she requested him to do so, and she made such requests
quite frequently. To a person of testatrix's age, sex and condi-
tion in life the services which the defendant rendered to her were
almost indispensable to her comfort. It is not disputed that he
gave her, in all he undertook to do for her, the best service he

could render, and that he was always honest and faithful. The defendant was not related to the testatrix by blood, but had married her great-niece.

The fact that the defendant was the testatrix's chief man of business, and that he had, in that capacity, rendered services to her of a quality and to an extent which deserved remuneration or recognition seems to have been known to and appreciated by the complainant. The testatrix made her will during her last sickness, about a week before her death. The complainant was present when she gave instructions for the draft of her will. A number of other persons were also present. They all agree that while the testatrix was giving her instructions, the complainant said to her that the defendant had been kind to her and had done a great deal for her ; and then asked if she did not want to leave him something, and that she replied that he had already been paid, but did not state how or with what he had been paid. If this reply referred to the receipt, there should be no further question respecting either its honesty or validity. There is no proof in the case showing a payment to the defendant by any other means or in any other way. There is no pretence that the testatrix gave the defendant either the whole or any part of the interest accruing on the bond and mortgage ; the proof, on the contrary, shows that both before and after the receipt was executed, the defendant paid the interest on the bond and mortgage each year. No property belonging to the testatrix is traced from her possession to that of the defendant, nor is there a word of evidence in the case which will support even a conjecture that the testatrix ever paid the defendant a penny for his services, or made him a gift of either money or money's worth. The failure of the complainant to show that the remark of the testatrix, that the defendant had already been paid, can fairly be applied to some other method of payment than the surrender of the bond and mortgage, makes the probability that she meant that she had paid by giving the receipt, so strong, in my judgment, as to approach almost to certainty. In the present condition of the proofs, that is the only meaning which, as it seems to me, can be attributed to her remark, unless it be assumed that she was

speaking to deceive, and that, it is obvious, is a purpose which, in view of the condition of her health, her character, and the business in which she was then engaged, it would be both unreasonable and unjust to abscribe to her.

But there is other proof on this point. The female, who nursed the testatrix during her last illness, testifies that, on the Sunday preceding the Thursday on which the testatrix died, the defendant visited the testatrix at the house of the complainant's mother. The testatrix was taken sick there in the early part of September, 1885, and died there on the 1st of October following. This witness says, that while the defendant was with the testatrix, on this occasion, the testatrix told him she had made a will, and said she hoped he was satisfied. She also says, that just before the defendant left, the testatrix asked him to stay with her, but on his replying that he could not, she kissed him and bade him good-bye, and then asked him to come to see her as often as he could. She also swears that, soon after the defendant left, she said to the testatrix: "Peter is such a friend of yours; how comes it you did not remember him in your will?" To which the testatrix replied: "I will tell you, but you must not tell any one. I have given Peter something, a paper, so that he will be paid after my death." There can be no doubt that this remark referred to the receipt, nor, if this evidence is true, that the defendant should be awarded the fund in controversy. I know of no reason why the evidence of this witness should not be believed. There is nothing unnatural or improbable about it; on the contrary, it stands in strict accord with all the probabilities of the case. This witness was present when the testatrix gave instructions for the draft of her will, and heard her decline to place the defendant among her beneficiaries. She afterwards saw the testatrix manifest strong affection for him, and heard her speak of her obligations to him. It was, therefore, perfectly natural that she should make the remark to the testatrix that she says she did, and it is also easy to believe, in view of what the evidence shows the defendant had done for the testatrix, that the testatrix should say, in reply to the remark of this witness, just what this witness says she did.

An attempt was made to impeach this witness, by showing that she had made statements not under oath which were inconsistent with her statements made under oath. The strongest evidence against her on this point is that which proceeded from her own mouth. She says that she may have made statements before she was called as a witness which were, to some extent, inconsistent with her evidence; that her recollection is not clear, but that she was inclined to think that she had. The other witnesses, who were called to impeach her, gave evidence on this point, which is so loose, equivocal and ambiguous as to deprive it of all force. Such evidence, when presented in its best condition, should receive very careful scrutiny. There is always danger that the impeaching witness has misunderstood the witness whose words he attempts to repeat, or that, in attempting to translate the thoughts of another, he may, by an unintentional change of language, impute to such other thoughts or sentiments which he never entertained nor expressed. After listening attentively to all the evidence on this branch of the case, and closely observing the demeanor of the witnesses while on the stand, and after having given full consideration to their evidence, no doubt is left on my mind of the substantial truth of the evidence given by the testatrix's nurse. Another witness testified that the testatrix had spoken of the receipt to him, but there are parts of his evidence which appear to me to be so improbable that, in forming my conclusion as to the honesty of the receipt, I have felt constrained to exclude his evidence from my consideration.

Considering the honesty of the paper to be established, the next question to be decided is, Can effect be given to the paper as a discharge of the mortgage debt? The complainant's position on this question has already been stated. He says that the promise which the testatrix made by the paper is a mere *nudum pactum*, and that if the utmost effect is given to it, in favor of the defendant, it simply amounts to an engagement by the testatrix to make a gift of the debt, or to forgive the debt on her death. Want of a sufficient consideration to give legal efficacy to the testatrix's promise constitutes the very foundation of the

complainant's case. The case is one where the court must, to prevent a failure of justice, be governed, to a considerable extent, by its reasonable probabilities. Death has closed the lips of the testatrix, the law closes the mouth of the defendant; the receipt is here to speak, but the story which it tells is obviously incomplete. It does not tell all that it is desirable to know, but it tells enough, when viewed in the light of the relations of the parties, and their obligations to each other, to render it so highly probable, that the testatrix signed it with the intent that it should have effect, on her death, as a release or discharge of the mortgage debt, as to approach very near certainty. But this intent, standing alone, and unsupported by a consideration, or not expressed in such form as to raise a conclusive presumption of consideration, is not sufficient to discharge the debt. There is no such thing as an equitable release, as contradistinguished from a legal release, or a release good at law. The opposite doctrine, declared by Chancellor Zabriskie in *Leddel* v. *Starr, 5 C. E. Gr. 274,* has been repudiated. *Irwin* v. *Johnson, 9 Stew. Eq. 347.* The rule now in force is, that no act or conduct on the part of a creditor, indicating an intention to release or forgive a debt, will operate as a release or discharge in equity, unless it is entitled to the same effect at law. *Irwin* v. *Johnson, supra; Cross* v. *Sprigg, 6 Hare 552; Peace* v. *Hains, 11 Hare 151.* The question then is, Is the testatrix's promise supported by a sufficient consideration to render it valid at law? And just here, I think, it should be mentioned, that the defendant had, prior to the filing of the bill in this case, brought his action at law against the complainant, as an individual, to recover the value of the bond and mortgage in question. If the defendant had been allowed to proceed with his action to trial, there can be no doubt that, under the rule laid down in *Hodge* v. *Coriell, 15 Vr. 456,* he would have been competent to testify in his own behalf and put in evidence, by his own mouth, all the facts connected with the origin of the receipt.

A consideration sufficient to support a contract may be defined to be, either a benefit accruing to the promissor, or a loss or disadvantage sustained by the promisee. A consideration ema-

nating from some injury or inconvenience to the one party, or from some benefit to the other, is a valuable consideration. *Conover* v. *Stillwell, 5 Vr. 54.* A very slight advantage to one party, or a trifling inconvenience to the other, is a sufficient consideration to support a contract when made by a person of good capacity, who is not at the time under the influence of any fraud, imposition or mistake. *Harlan* v. *Harlan, 20 Pa. St. 303.* The payment of a part of a debt in money will not operate as a satisfaction of the whole, even though the creditor has agreed that the payment of a part should have that effect, but the rule is otherwise where the debtor pays in something else than money, and the creditor accepts it with the understanding that it shall discharge the whole debt. In *Coke on Littleton* it is said : " In the case of feoffment in mortgage, if the feoffer payeth to the feoffee a horse, or a cup of silver, or a ring of gold, or any such thing, in full satisfaction of the money, and the other receiveth it, this is good enough, and as strong as if he had received the sum of money, though the horse or other thing were not of the twentieth part of the value of the sum of money, because the other hath accepted it in full satisfaction." *2 Co. Litt. tit. "Est. on Con."* §§ *344, 212a.* If the testatrix gave the receipt in question under a promise to the defendant that the services which he had theretofore rendered to her, and those which he should thereafter render, should be considered as an equivalent for the mortgage debt, and, on her death, operate to discharge the debt, there can be no doubt, I think, that her promise has the support of a sufficient consideration to give it legal efficacy. As to the adequacy or sufficiency of the consideration, the testatrix had an unquestionable right to be her own judge, and in cases of this class, where no undue influence, imposition or fraud is proved, inadequacy of consideration is without the least force as an objection to the validity of the contract. A purely technical consideration, of very trifling value in comparison with the amount of the debt, will be held to be sufficient in such cases. *Kellogg* v. *Richards, 14 Wend. 116 ; Brooks* v. *White, 2 Met. 283.* The proofs convince me that the testatrix signed this receipt intending that it should, on her death, stand as evidence that

the mortgage debt had been paid by services which the defendant had rendered to her. This, I think, is demonstrated, not only by what she said while giving instructions for the draft of her will, and by what she subsequently said to her nurse, but also by the fact that it appears that the defendant had, for many years, rendered services to the testatrix which were valuable to her, and which were worthy of compensation, and for which the testatrix said she had paid, but which, so far as the evidence shows, were not paid for, unless effect be given to the admission of payment contained in the receipt. The obvious and fatal defect of the complainant's case, as I view the proofs, consists in his failure to show that the testatrix's statement, that she had paid the defendant for his services, can, reasonably or fairly, be applied to any other means of payment than that indicated by the receipt.

But a single other question requires consideration. The defendant stood in a confidential relation to the testatrix at the time the receipt was given. He was her adviser. He was for that reason bound to exercise towards her, in all his dealings with her, the utmost fairness and good faith. In making a contract with her, his duty required him to refrain from all misrepresentations, to conceal nothing, but to see to it that all was open, fair, voluntary and well understood. And the burden of proving that he dealt with her in this manner rests on him. The proofs, however, I think, show that his conduct towards her, in this transaction, was free from fault. When asked, while giving instructions for the draft of her will, if she did not want to give him a legacy as a reward for his services, it will be remembered that she said no, she had already paid him. It has already been shown that this remark can, so far as the evidence shows, be applied to nothing except the receipt. At the time this remark was made, the defendant was absent, and the testatrix was free to speak as she felt. If there had been anything in the defendant's conduct, in connection with the receipt, which the testatrix thought blameworthy—if there had been any overreaching or deception, any undue pressure or urgency—that was the time she would have spoken of it, and the fact that she made no com-

plaint against the defendant then, nor in her subsequent conversation with her nurse, furnishes almost conclusive evidence that she had none to make, but, on the contrary, believed her promise to the defendant to be valid and desired that it should be kept.

Except it be assumed that the receipt has been altered, it is impossible not to see a deliberate purpose on the part of the testatrix to release the mortgage debt, on her death, as a compensation to the defendant for his services. In this condition of affairs the court should not be eager to find a way to defeat such purpose, but rather to give effect to it. Justice to the defendant, as well as a decent regard for the desire of the testatrix to discharge what she evidently esteemed a just obligation, should incline the court to give effect to the teststrix's purpose in this respect, if it can do so without violating any well-settled rule of law.

The defendant, in my judgment, is entitled to a decree directing that the fund in controversy be paid to him.