Jacqueline **BRADFORD**, Plaintiff,

v.

**KFC NATIONAL MANAGEMENT COMPANY, et al.,** Defendants.

No. CIV. A. 97–A–1238–N.

United States District Court, M.D. Alabama, Northern Division.

May 15, 1998.

---

Spence A. Singleton, Montgomery, AL, for Plaintiff.

Beverly P. Baker, Michael Choy, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

This matter is before the court on a motion to dismiss, or in the alternative motion to stay all proceedings, pending arbitration, filed by Defendant KFC National Management Company. KFC employed the Plaintiff, and the two had an agreement whereby all disputes between them would be arbitrated. Plaintiff has, nevertheless, filed a lawsuit against KFC alleging that the Defendant violated Title VII and state tort law in terminating and sexually harassing her.

Both the Plaintiff and KFC have fully briefed the issue of arbitration. The court will, therefore, treat Defendant's motion as a submitted motion to compel arbitration pursuant to 9 U.S.C. § 4. Plaintiff has not come forward with a valid reason for the court not to enforce the arbitration agreement between herself and KFC. The agreement is due to be ENFORCED and the case STAYED to proceed in arbitration.

### Federal Arbitration Law.

Pursuant to the Federal Arbitration Act, a written arbitration "provision in any . . . contract evidencing a transaction involving commerce . . . [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" to petition the court "for an order directing that such arbitration proceed." When a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

These principles of arbitration law apply with equal validity to Title VII claims and claims of sexual harassment. Such statutory employment laws are arbitrable as well. *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir.1992); *see also Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1062 (11th Cir.1998) (Cox & Tjoflat) ("Federal statutory claims are generally arbitrable because arbitration, like litigation, can serve a remedial and deterrent function, and federal law favors arbitration").

### The Arbitration Clause at Issue.

The court has been furnished with a copy of the employment application completed by Plaintiff on March 15, 1994. The application states on its cover that "[t]he *Agreement* section of the application must be read and signed in order for you to be considered for employment with KFC." The Agreement section is included just above the employee's signature. Further, it is set off in a box; has a broad black border at the top; and is labelled in all capitals, in reverse color, large type "AGREEMENT." Within the agreement section, there is a subsection, labeled in centered, all capitals letters "ARBITRATION OF EMPLOYEE RIGHTS." This section states

### ARBITRATION OF EMPLOYEE RIGHTS

Because of, among other things, the delay and expense which result from use of the court systems, if I am offered employment and accept, KFC and I agree to submit to binding arbitration any claims concerning the termination of my employment. I also

agree, before this arbitration process is used: (i) first, to present any such claims in written detail to the KFC Human Resources Department, (ii) next, to pursue to completion any KFC internal review process, and (iii) finally, to file and pursue to completion any external administrative remedy (such as with the Equal Opportunity Employment Commission) [sic]. In any such arbitration, the then prevailing rule of the American Arbitration Association (and, to the extent not inconsistent, the then prevailing rules of the Federal Arbitration Act) shall apply.

Plaintiff has also received an employee handbook from KFC which contains a somewhat broader arbitration clause. This clause is included on a separate page of the handbook, which states at the top in large, bolded type: **"Please read carefully and sign."** Below that statement, the arbitration clause reads:

ARBITRATION OF EMPLOYEE RIGHTS: Because of, among other things, the delay and expense which result from use of the court systems, I agree as a condition of my employment and continued employment (and KFC also agrees) to submit to binding arbitration any claims that arise between me and KFC, its parent and affiliate corporations and any of their current or former officers, directors, employees, attorneys and agents, concerning compensation, employment (including, but not limited to, any claims concerning sexual harassment), or termination of employment. I also agree, before any such arbitration process (i) first, to present any such claims in full written detail to the KFC Human Resources Department; (ii) next, to pursue to completion any KFC internal review process; and (iii) finally, to pursue to completion any external administrative remedy (such as with the Equal Employment Opportunity Commission). In any arbitration, the then prevailing rules of the American Arbitration Association (and, to the extent not inconsistent, the then prevailing rules of the Federal Arbitration Act) shall apply.

Plaintiff signed at the bottom of this page, thereby agreeing to the arbitration clause, on December 22, 1995.[1]

### Plaintiff's Objections.

█] Plaintiff has not objected that the arbitration agreement between herself and KFC fails to meet with any requirements that the Eleventh Circuit may apply. Indeed, this argument could not be made given that the instructions of the Eleventh Circuit have been followed in this case. See Paladino, 134 F.3d at 1059 (Hatchett) ("To fall within the FAA's ambit ... an arbitration agreement that purports to cover statutory claims must contain terms that generally and fairly inform the signatories that it covers statutory claims" and "must also be consistent with the purposes underlying any statutory claims."). In addition, Plaintiff has not argued that the agreements here fail to meet with other general contractual requirements, such as consideration or unconscionability. Rather, Plaintiff's argument focuses strictly on language from another part of the agreement. Plaintiff, in effect, argues that this 'other language' prevents enforcement of her agreement to arbitrate.

The language on which Plaintiff relies is part of the same at-will employment **"AGREEMENT,"** and reads as follows (along with other surrounding portions):

I agree that if I am offered employment by KFC and accept, my employment will be employment at will and not for any specific duration, that my employment and compensation can be terminated, with or without notice, at any time, at the option of either KFC or myself.

I am hereby informed and I understand that nothing contained in this application, any KFC manual, handbook, or other written materials shall constitute an implied or expressed contract of employment. All such materials are presented for information purposes only and can be changed at any time by KFC, with or without notice. Furthermore, no employee or agent of KFC, other than the Chief Executive Officer, has any authority to enter into any

---

1. Her signature also served to acknowledge receipt of the book, and to agree to "call Human Resources immediately" to report any incident of sexual harassment.

agreement for employment for any specified period of time or to make any agreement contrary to the foregoing and that any such agreements must be in writing and must be signed by the Chief Executive Officer of KFC. . . .

Plaintiff argues that this language prevents KFC from entering into any agreements, at all, with an employee, other than the first sentence creating an at-will employment. Further, Plaintiff argues that any arbitration agreement which KFC enters into with an employee, would have to, pursuant to these terms, be signed by the CEO of KFC. Both of these arguments are without merit.

Plaintiff's arguments fail for what are essentially three reasons. First, and most important, the quoted language simply does not mean what the Plaintiff argues that it means. This 'other language' does not mean that anything other than the first quoted sentence-the at-will employment clause-can constitute an agreement between KFC and the employee. To begin with, this 'other language' is part of the same agreement that includes the initial arbitration clause, and cannot be read to defeat the arbitration clause. Further, this 'other language' contains no terms which would defeat a later agreement to arbitrate. The language referring to the signature of the CEO is only in reference to agreements which create employment "for any specified period" or agreements which are otherwise "contrary to the foregoing" at-will employment clause. The CEO is not required by this language to sign the initial arbitration agreement, or to sign a later arbitration agreement. The arbitration agreements that form part of the Bradford–KFC relationship simply do not violate the language that Plaintiff argues over.

Indeed, arbitration agreements in general, and the ones here in particular, in no way violate a prohibition, or limitation, on employment at other than at-will status. Indeed, all that the language on which Plaintiff focuses accomplishes is to prevent a situation where an employee insists that there is anything other than an at-will employment contract between herself and KFC. KFC has not instituted, by this language, a situation where only the CEO could ever create any

further or supplemental agreements between the company and an employee. All KFC has done is make sure that any contracts for employment of a certain duration must be approved by the CEO. At-will employment is KFC's rule, and KFC apparently intends for at-will employment to remain the rule. This rule, however, does not prevent an arbitration agreement.

■    Plaintiff's arguments are not only without merit by their own terms, however. As a second matter, they are also without justification under traditional principles of contract law. It is a basic principle of contract law that "a document should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). Here, that can only be done if the arbitration agreement-which was included in the initial agreement that also contains the Plaintiff's 'other language-is given full effect. Further, it is also a basic principle of contract law that "[w]hen general positions in a contract are qualified by the specific provisions, the rule of construction is that the specific provisions in the agreement control." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381, 384 (11th Cir.1995). The arbitration agreements in this case are specific, and should not be read out of the Bradford–KFC relationship simply because there is more general language which could be read-in a strained reading-to contradict them.

Third, refusing to enforce the arbitration clause in this contract would also be a violation of general federal law regarding arbitration. As stated by the United States Supreme Court

questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitrability.

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Further, Congress stated in the Civil Rights Act of 1991, which amended Title VII, that

> the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under the Acts or provision of federal law amended by this title.

Pub.L. No. 102–166, § 118, 105 Stat. 1071, 1081 (1991), as quoted in *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (8th Cir.1997).

Both the Supreme Court and Congress have, therefore, instructed courts, and others, to favor arbitration in a Title VII context. Certainly the intentions of the parties control, and the court should not order arbitration where the parties have not intended for it to apply. *Paladino*, 134 F.3d at 1057 (Hatchett). Nevertheless, the court's interpretation of those intentions should "generously" favor arbitration. *Mitsubishi*, 473 U.S. at 626, 105 S.Ct. 3346. Here, it does not even take generosity to find that the parties have agreed to arbitration. The Plaintiff, Bradford, signed and agreed to an arbitration agreement when she applied for employment at KFC; further, she signed and agreed to an arbitration agreement on December 22, 1995.

The court might be inclined to view this situation differently if the employer had somehow sneaked an arbitration clause in on the employee. For example, the court might think differently if the only arbitration clause was buried somewhere in the handbook, and the employee had only signed a general receipt acknowledging that she was given the handbook. *See, e.g., Ex parte Beasley*, 1998 WL 122731, No.1961623 (Ala., March 20, 1998) (refusing to enforce arbitration clause included in employee handbook where employee only signed a general receipt for the handbook, and had not signed "a document that contains a valid arbitration clause."). Here, however, Bradford signed both the initial arbitration agreement, and the later arbitration agreement. Further, that later

agreement was set off by separate language and a bold headline on a separate page of the handbook; was signed directly by the employee; and included contractual language such as "I agree." That second agreement, by itself, would be due to be enforced, and would compel arbitration in these circumstances. *See Patterson*, 113 F.3d at 835 (enforcing arbitration agreement within employee handbook where separately set out, signed, marked by a bold title and change in language, and used contractual terms); *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272 (4th Cir.1997) (reversing trial court for failing to enforce arbitration clause that was part of acknowledgment in employee handbook). There is simply no reason to find that the parties did not agree to arbitration in this case.

### Conclusion.

Defendant KFC's motion to compel arbitration in the present case is due to be GRANTED. Plaintiff has not shown, and the court cannot find, any reason why the present dispute between KFC and the Plaintiff is not covered under the arbitration agreement between KFC and Bradford. The matter will be STAYED pending arbitration in compliance with 9 U.S.C. § 3. *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir.1992). A separate order will be entered to that effect.

### ORDER

1. Defendant KFC National Management Company's Motion of November 13, 1997, (doc. #10), treated as a motion to compel arbitration between the Plaintiff and KFC, is GRANTED.

2. Plaintiff is ordered to submit all claims against the Defendant KFC to binding arbitration.

3. Since there are no additional defendants to this case who have been served, this case is STAYED pending arbitration. The parties are directed to report jointly to the court on November 16, 1998, as to the status of

arbitration, if this matter has not been disposed of by then.