800 A.2d 872

MAUREEN MARTINDALE, PLAINTIFF–APPELLANT, v. SANDVIK, INC., SANDVIK COROMANT COMPANY, INC., PAUL HODGEN, RICK ASKIN AND JOHN CASCIANO, DEFENDANTS–RESPONDENTS, AND JOHN DOES ONE THROUGH SEVENTEEN, DEFENDANT.

Argued January 14, 2002—Decided July 17, 2002.

*Anthony N. Iannarelli, Jr.* argued the cause for appellant.

*Jill E. Jachera* argued the cause for respondents (*Morgan, Lewis & Bockius,* attorneys; *Joseph A. Piesco, Jr.,* on the brief).

The opinion of the Court was delivered by

LaVECCHIA, J.

This appeal addresses the enforceability of an arbitration agreement contained in an application for employment. The courts below concluded that the agreement to arbitrate executed by the parties was valid and enforceable notwithstanding its inclusion in an application for employment, and therefore held that plaintiff was bound to submit her claims against her former employer to arbitration. All of plaintiff's claims were held to be encompassed by the arbitration agreement, including her statutory claims concerning family leave and those alleging discrimination. We agree and affirm the judgment of the Appellate Division.

I.

Plaintiff Maureen Martindale applied and was hired for the position of Benefits Administrator with defendant Sandvik, Inc. in 1994. When she applied, plaintiff had to complete and sign an "Application for Employment" that included an arbitration agreement that appeared on page four of the application. The arbitration agreement stated:

AS A CONDITION OF MY EMPLOYMENT, I AGREE TO WAIVE MY RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING RELATED TO MY EMPLOYMENT WITH SANDVIK.

I UNDERSTAND THAT I AM WAIVING MY RIGHT TO A JURY TRIAL VOLUNTARILY AND KNOWINGLY, AND FREE FROM DURESS OR COERCION.

I UNDERSTAND THAT I HAVE A RIGHT TO CONSULT WITH A PERSON OF MY CHOOSING, INCLUDING AN ATTORNEY, BEFORE SIGNING THIS DOCUMENT.

I AGREE THAT ALL DISPUTES RELATING TO MY EMPLOYMENT WITH SANDVIK OR TERMINATION THEREOF SHALL BE DECIDED BY AN

ARBITRATOR THROUGH THE LABOR RELATIONS SECTION OF THE AMERICAN ARBITRATION ASSOCIATION.

Plaintiff also submitted a resume that set forth her educational background and extensive experience in the field of benefits administration.

It is undisputed that defendant provided her with the opportunity to ask questions about the application and the arbitration agreement and to consult a third party, including an attorney, before signing the documents. Although plaintiff asked questions about the position, she did not ask any questions about the application. According to plaintiff, defendant informed her that she was required to sign page four of the application; nonetheless, there is no claim that plaintiff was coerced into signing the arbitration agreement. Similarly, defendant's Director of Human Resources, John Casciano, testified at a deposition that his practice, followed in respect of plaintiff, was to ask an applicant to read the Application for Employment, review the document with the applicant, and offer to answer any questions. He said that applicants were permitted to take the application home to complete it, and then return it at a later date.

In January 1996, plaintiff informed defendant that she was pregnant. Nearly two weeks before giving birth, plaintiff began to experience medical problems related to her pregnancy. Consequently, plaintiff obtained disability leave. After giving birth, plaintiff requested and defendant granted family and medical leave to commence at the termination of plaintiff's disability leave. However, prior to the termination of plaintiff's disability leave and the commencement of her family and medical leave, defendant notified plaintiff that her position was being eliminated due to a reorganization of defendant's holding company and its financial department. Defendant ceased disability payments to plaintiff in November 1996.

Plaintiff filed a complaint against defendant alleging violation of the New Jersey Family Leave Act, *N.J.S.A.* 34:11B–1 to –16(FLA). Defendant removed the matter to the United States

District Court for the District of New Jersey and filed a motion to dismiss, in part. Defendant alleges that while that motion was pending it recalled the agreement to arbitrate contained in the Application for Employment.

A remand to the Law Division ensued and thereafter plaintiff amended her complaint to add individual defendants and a claim under the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 to –49(LAD). Defendant then moved to stay the proceedings and compel arbitration. The trial court granted the motion and dismissed plaintiff's complaint without prejudice, but ordered a stay pending appeal.

On appeal, the Appellate Division affirmed the orders dismissing plaintiff's complaint and compelling arbitration. The panel held that the arbitration agreement contained in the Application for Employment was valid and enforceable, and rejected the contention that the agreement was a contract of adhesion. We granted plaintiff's petition for certification. 169 *N.J.* 610, 782 *A.*2d 427 (2001).

## II.

The first step in considering plaintiff's challenge to enforcement of an arbitration requirement must be to determine whether a valid agreement exists. Determining whether plaintiff is contractually bound is the predicate to the question whether the specific contractual language requires arbitration of her FLA and LAD claims.

## A.

We address the question whether plaintiff has entered into a binding agreement to arbitrate disputes with her employer against the backdrop that arbitration agreements may not be subjected to more burdensome contract formation requirements than that required for any other contractual topic. Pursuant to its substantive power to regulate interstate commerce, Congress en-

acted the Federal Arbitration Act (FAA), also known as the United States Arbitration Act, in 1925, to abrogate the then-existing common law rule disfavoring arbitration agreements "and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 *U.S.* 20, 24, 111 *S.Ct.* 1647, 1651, 114 *L.Ed.*2d 26, 36 (1991). Section 2 of the FAA provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such a contract or transaction . . . shall be valid, irrevocable, and enforceable save upon grounds as exist at law or in equity for the revocation of any contract." 9 *U.S.C.* § 2 (1994).

■ In enacting section 2 of the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 *U.S.* 1, 10, 104 *S.Ct.* 852, 858, 79 *L.Ed.*2d 1, 12 (1984). The substantive protection of the FAA applies irrespective of whether arbitrability is raised in federal or state court. *Id.* at 16, 104 *S.Ct.* at 861, 79 *L.Ed.*2d at 15. Those principles were reaffirmed in *Circuit City Stores v. Adams,* 532 *U.S.* 105, 121 *S.Ct.* 1302, 149 *L.Ed.*2d 234 (2001), where the Supreme Court held that the FAA's coverage extends to employment contracts. *Id.* at 112, 121 *S.Ct.* at 1307, 149 *L.Ed.*2d at ——. *Cf. Brown v. KFC Nat'l Mgmt. Co.*, 82 *Hawai'i* 226, 921 *P.*2d 146, 159 (1996) (holding arbitration agreement contained in employment application satisfied FAA; " 'the creation of an employment relationship which involves commerce is a sufficient 'transaction' to fall within section 2 of the [FAA]' ") (quoting *White–Weld & Co. v. Mosser,* 587 *S.W.*2d 485, 487 (Tex.Civ.App.1979), *cert. denied,* 446 *U.S.* 966, 100 *S.Ct.* 2943, 64 *L.Ed.*2d 825 (1980)).

■ The New Jersey Legislature codified its endorsement of arbitration agreements in *N.J.S.A.* 2A:24–1 to –11. Moreover, New Jersey courts also have favored arbitration as a means of resolving disputes. *See, e.g., Garfinkel v. Morristown Obstetrics*

& *Gynecology Assocs.*, 168 *N.J.* 124, 131, 773 *A.*2d 665 (2001) (noting favored status accorded to arbitration, but stating that favored status is not without limits); *Marchak v. Claridge Commons, Inc.*, 134 *N.J.* 275, 281, 633 *A.*2d 531 (1993) (stating that "arbitration is a favored form of relief" and that "arbitrators function with the support, encouragement, and enforcement power of the State"); *Barcon Assocs., Inc. v. Tri–County Asphalt Corp.*, 86 *N.J.* 179, 186, 430 *A.*2d 214 (1981) (stating that Legislature has encouraged arbitration and courts have favored arbitration because of significant advantages arbitration offers to parties); *Alamo Rent A Car, Inc. v. Galarza*, 306 *N.J.Super.* 384, 389, 703 *A.*2d 961 (App.Div.1997) (recognizing "strong public policy in our state favoring arbitration as a means of dispute resolution and requiring a liberal construction of contracts in favor of arbitration"); *Yale Materials Handling Corp. v. White Storage & Retrieval Sys., Inc.*, 240 *N.J.Super.* 370, 375, 573 *A.*2d 484 (App.Div.1990) (reiterating that "New Jersey law [is] consonant with federal law which liberally enforces arbitration agreements"). Thus, in deciding whether to enforce the arbitration provision in this application for employment, we rely on the well-recognized national policy and the established State interest in favoring arbitration.

### B.

Although it is firmly established that the FAA preempts state laws that invalidate arbitration agreements, the FAA specifically permits states to regulate contracts, including contracts containing arbitration agreements under general contract principles; therefore, an arbitration clause may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract." 9 *U.S.C.* § 2. *See generally, First Options of Chicago, Inc. v. Kaplan*, 514 *U.S.* 938, 944, 115 *S.Ct.* 1920, 1924, 131 *L.Ed.*2d 985, 993 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts."); *Mastrobuono v. Shear-*

*son Lehman Hutton, Inc.,* 514 *U.S.* 52, 62–63 & n. 9, 115 *S.Ct.* 1212, 1218–19 & n. 9, 131 *L.Ed.*2d 76, 87–88 & n. 9 (1995) (employing common law rule of contract interpretation and citing to precedent of forum state where contract was executed to hold that contract between securities brokerage firm and customers permitted arbitrator to award customers punitive damages); *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.,* 489 *U.S.* 468, 475, 109 *S.Ct.* 1248, 1254, 103 *L.Ed.*2d 488, 498 (1989) (reiterating application of general state-law principles of contract formation to determine whether arbitration agreement fell within scope of FAA); *Perry v. Thomas,* 482 *U.S.* 483, 492 n. 9, 107 *S.Ct.* 2520, 2526 n. 9, 96 *L.Ed.*2d 426, 437 n. 9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."). However, states may not "decide that a contract is fair enough to enforce all its basic terms ... but not fair enough to enforce its arbitration clause" because "that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the Act's language and Congress' intent." *Allied–Bruce Terminix Cos. v. Dobson,* 513 *U.S.* 265, 281, 115 *S.Ct.* 834, 843, 130 *L.Ed.*2d 753, 769 (1995).

## C.

■ Thus, the threshold issue is whether under state law the arbitration agreement constitutes a valid contract to arbitrate. Plaintiff contends that because the Application for Employment does not constitute an employment contract the arbitration provision contained therein is unenforceable. We disagree.

The parties do not dispute that they executed a written agreement to arbitrate all claims against defendant. That agreement is complete in and of itself and need not be part of a larger employment contract. Courts in many other jurisdictions have held that an arbitration provision, contained in an application for employment and in the absence of a separate employment agreement, constituted a valid and enforceable contract. *See generally,*

*Bradford v. KFC Nat'l Mgmt. Co.*, 5 *F.Supp.*2d 1311, 1315 (M.D.Ala.1998) (holding that plaintiff signed and agreed to arbitration agreement when she applied for employment with defendant); *Fuller v. Pep Boys–Manny, Moe & Jack of Delaware, Inc.*, 88 *F.Supp.*2d 1158, 1162 (D.Colo.2000) (compelling arbitration pursuant to arbitration provision contained solely in application for employment); *Sheller v. Frank's Nursery & Crafts, Inc.*, 957 *F.Supp.* 150, 154 (N.D.Ill.1997) (rejecting plaintiff's argument that because arbitration clause was located in employment application that was not contract of employment, there was no contractual agreement to arbitrate claims against employer and holding that employment application qualified as valid and enforceable contract to arbitrate); *DeGroff v. MascoTech Forming Techs.-Fort Wayne, Inc.*, 179 *F.Supp.*2d 896, 902–04 (N.D.Ind.2001) (compelling arbitration after finding that employee was bound by arbitration provision contained in documents signed during application process). As in those cases, the question of enforceability is determined not on the basis of whether the arbitration agreement is contained in an application for employment or in an employment contract, but rather whether the arbitration provision qualifies as a valid and enforceable contract. Thus, we turn to whether the written arbitration provision constitutes a valid and enforceable contract.

■■■ Basic contract principles render a promise enforceable against the promisor if the promisee gave some consideration for the promise. We have explained the well-established rule of consideration as follows:

> The essential requirement of consideration is a bargained-for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation. *See Restatement (Second) of Contracts* § 71 (1981). If the consideration requirement is met, there is no additional requirement of gain or benefit to the promisor, loss or detriment to the promisee, equivalence in the values exchanged, or mutuality of obligation. *Restatement (Second) of Contracts* § 79 (1979).
>
> [*Shebar v. Sanyo Bus. Sys. Corp.*, 111 *N.J.* 276, 289, 544 *A.*2d 377 (1988).]

Put another way, "[a] very slight advantage to one party, or a trifling inconvenience to the other, is a sufficient consideration to

support a contract when made by a person of good capacity, who is not at the time under the influence of any fraud, imposition or mistake." *Traphagen's Ex'r v. Voorhees,* 44 *N.J. Eq.* 21, 31, 12 *A.* 895 (Ch. 1888).

In all jurisdictions that have considered the question, courts have held that the creation of an employment relationship, which is achieved when the employer agrees to consider and/or agrees to hire the applicant for employment, is sufficient consideration to uphold an arbitration agreement contained in an employment application. *See generally, Johnson v. Circuit City Stores,* 148 *F.*3d 373, 378 (4th Cir.1998) (finding that although employer agreed to be mutually bound to terms of agreement to arbitrate, court would not foreclose that employer's willingness to consider employee's application could qualify as consideration); *Koveleskie v. SBC Capital Mkts., Inc.,* 167 *F.*3d 361, 368 (7th Cir.1999), *cert. denied,* 528 *U.S.* 811, 120 *S.Ct.* 44, 145 *L.Ed.*2d 40 (1999) (holding that employee's contract with employer was supported by adequate consideration because employee's signing of Form U–4 was supported by employer's promise of employment); *Sheller, supra,* 957 *F.Supp.* at 154 (ruling that employer's agreement to consider applicants for employment constituted sufficient consideration for applicants' signing of arbitration provision contained in employment application); *Rogers v. Brown,* 986 *F.Supp.* 354, 359 (M.D.La.1997) (upholding arbitration provision in application for employment, reasoning that employee's consideration for contract was employment and compensation from employer).

Similarly, in New Jersey, continued employment has been found to constitute sufficient consideration to support certain employment-related agreements. *See, e.g., Quigley v. KPMG Peat Marwick, LLP,* 330 *N.J.Super.* 252, 265, 749 *A.*2d 405 (App.Div.), *certif. denied,* 165 *N.J.* 527, 760 *A.*2d 781 (2000) (stating that employment can be deemed consideration for employee's submission to employer's demands, including arbitration); *Hogan v. Bergen Brunswig Corp.,* 153 *N.J.Super.* 37, 43, 378 *A.*2d 1164 (App.Div.1977) (holding that continuation of plaintiff's employment

for approximately three years after plaintiff signed letter acknowledging restrictive covenant against post-employment competition constituted sufficient consideration to enforce agreement).

The arbitration agreement contained in the Application for Employment signed by plaintiff was supported by consideration in the form of defendant's willingness to consider employment of plaintiff. The agreement provided that plaintiff would agree to waive her right to a jury trial and submit all disputes relating to her employment, including termination, to arbitration "as a condition of employment" with defendant. Although defendant was under no obligation to actually hire plaintiff, defendant's consideration of plaintiff's application, its extension of an offer and the commencement of employment, and thereafter the provision of compensation and on-going employment constituted sufficient consideration to support the parties' agreement to arbitrate their disputes. That agreement is binding, as would be any other contractual term not contrary to public policy contained in a signed employment application that led, as here, to employment.

## D.

Plaintiff contends in the alternative that the agreement to arbitrate her statutory claims against her employer constituted a contract of adhesion and that therefore it is not enforceable. A contract of adhesion, simply put, is a contract "presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity of the 'adhering' party to negotiate except perhaps on a few particulars." *Rudbart v. North Jersey Dist. Water Supply Comm'n.*, 127 *N.J.* 344, 353, 605 *A.*2d 681, *cert. denied*, 506 *U.S.* 871, 113 *S.Ct.* 203, 121 *L.Ed.*2d 145 (1992).

Even if the Application for Employment in this case, including the arbitration provision, was found to constitute a contract of adhesion, that does not render the contract automatically void. The observation that a contract falls within the definition of a contract of adhesion is not dispositive of the issue of enforceability. *Rudbart, supra,* 127 *N.J.* at 354, 605 *A.*2d 681.

Such a finding "is the beginning, not the end, of the inquiry." *Ibid.* In determining whether to enforce the terms of a contract of adhesion, courts must look not only to the standardized nature of the contract, "but also to the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract." *Id.* at 356, 605 *A.*2d 681. Similar to a consideration of contract formation, the decision whether an arbitration agreement constitutes an unenforceable contract of adhesion is fact-sensitive, and therefore must be determined on a case-by-case basis. *See generally, Caldwell v. KFC Corp.,* 958 *F.Supp.* 962, 975 n. 7 (D.N.J.1997) (noting that cases deciding enforcement of arbitration clause in adhesive employment application are "inextricably tied to their facts and not necessarily controlling in later, similar cases").

The United States Supreme Court in *Gilmer* declared that "[m]ere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer, supra,* 500 *U.S.* at 33, 111 *S.Ct.* at 1655, 114 *L.Ed.*2d at 41. As the Appellate Division explained in *Young v. Prudential Insurance Company of America, Incorporated,* 297 *N.J.Super.* 605, 688 *A.*2d 1069 (App.Div. 1997), "the Supreme Court [in *Gilmer* ] obviously contemplated avoidance of the arbitration clause only upon circumstances more egregious than the ordinary economic pressure faced by every employee who needs the job." 297 *N.J.Super.* at 621, 688 *A.*2d 1069. Virtually every court that has considered the adhesive effect of arbitration provisions in employment applications or employment agreements has upheld the arbitration provision contained therein despite potentially unequal bargaining power between employer and employee. *See generally, Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 *F.*3d 1, 17 (1st Cir.1999) (holding that absent showing of fraud or oppressive conduct, arbitration of plaintiff's age and gender discrimination claims pursuant to arbitration provision contained in Form U–4 was permissible); *Seus v. John Nuveen & Co.,* 146 *F.*3d 175, 184

(3d Cir.1998), *cert. denied,* 525 *U.S.* 1139, 119 *S.Ct.* 1028, 143 *L.Ed.*2d 38 (1999) (rejecting argument that disparity in bargaining power resulted in contract of adhesion); *Koveleskie, supra,* 167 *F.*3d at 367 (upholding employee's agreement to arbitrate Title VII claim, noting that state law does not void contracts based on unequal bargaining power or contracts made on "take-it-or-leave-it" basis); *Nur v. KFC, USA, Inc.,* 142 *F.Supp.*2d 48, 51–52 (D.D.C.2001) (rejecting argument that arbitration agreement contained in employment application of restaurant's assistant manager was unenforceable contract of adhesion, where agreement was not unduly burdensome, did not favor one party over other, and provided that American Arbitration Association and FAA rules apply to arbitration proceeding).

 Turning to the arbitration agreement contained in plaintiff's Application for Employment, we do not find determinative the fact that plaintiff was required to sign an employment application containing an arbitration agreement in order to be considered for employment. The employment application was not offered on a take-it-or-leave-it basis. Defendant gave plaintiff an opportunity to ask questions about the application and to take it with her for further quiet review or, perhaps, consultation with family, friends, or a professional such as an attorney. Plaintiff herself was an educated person who was experienced in the field of human resources. Nothing in the record indicates that plaintiff asked to alter any terms of the application or that Sandvik would have refused to consider her for the position if she did not assent to the arbitration provision as presented. Accordingly, we are not persuaded that plaintiff was forced to sign an inflexible contract of adhesion in the circumstances of her completion of the Application for Employment.

 Nonetheless, even if the arbitration agreement could be so characterized, the agreement's subject matter and the public interests affected lead to the conclusion that it should not be invalidated. Plaintiff has failed to demonstrate how the terms of the arbitration agreement were oppressive or unconscionable. As

stated earlier, our courts have held on numerous occasions that agreements to arbitrate are not violative of public policy. *Marchak, supra,* 134 *N.J.* at 281–82, 633 *A.*2d 531. Rather, the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes. *Barcon, supra,* 86 *N.J.* at 186, 430 *A.*2d 214. The insertion of an arbitration agreement in an application for employment simply does not violate public policy.

We perceive no meaningful difference between including a requirement that an employee arbitrate all disputes relating to employment in an application for employment versus an employment contract or an employee handbook. The inclusion of an arbitration provision in an application for employment does not render the agreement any more a contract of adhesion than when it appears in an employment agreement or employee handbook. Indeed, by inserting an arbitration agreement in an application for employment, the prospective employee is put on notice before accepting an offer of employment that his or her claims against that employer will be submitted to an arbitral forum. In conclusion, we hold that the Application for Employment and, specifically, its accompanying arbitration agreement should not be invalidated as a contract of adhesion. The agreement is not rendered unenforceable by the circumstances surrounding the manner in which the contract was formed.

### III.

▮▮▮▮▮ Having found that a valid agreement to arbitrate exists, the scope of the agreement must next be determined. In the interpretation of an agreement to arbitrate, the duty to arbitrate rests solely on the parties' intentions as set forth in the writing. *Cohen v. Allstate Ins. Co.,* 231 *N.J.Super.* 97, 101, 555 *A.*2d 21 (App.Div.), *certif. denied,* 117 *N.J.* 87, 563 *A.*2d 846 (1989).

▮▮▮▮▮ Preliminarily, it is well established that an employee may be bound by an agreement to waive his or her right to pursue a statutory claim in a judicial forum in favor of arbitration.

*Gilmer, supra,* 500 *U.S.* at 30, 111 *S.Ct.* at 1654, 114 *L.Ed.*2d at 39; *Garfinkel, supra,* 168 *N.J.* at 131, 773 *A.*2d 665; *Alamo, supra,* 306 *N.J.Super.* at 389, 703 *A.*2d 961. The essential point is that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 *U.S.* 614, 628, 105 *S.Ct.* 3346, 3354, 87 *L.Ed.*2d 444, 456 (1985); *Barcon, supra,* 86 *N.J.* at 187, 430 *A.*2d 214 (noting that arbitration merely substitutes arbitral forum for judicial forum with objective of achieving final disposition in speedy, inexpensive, and expeditious manner); *Gras v. Associates First Capital Corp.,* 346 *N.J.Super.* 42, 52–53, 786 *A.*2d 886 (App.Div.2001), *certif. denied,* 171 *N.J.* 445, 794 *A.*2d 184 (2002) (finding no conflict between arbitration and Consumer Fraud Act; reasoning that plaintiffs can vindicate statutory rights in arbitral forum).

Here, having agreed to arbitrate, the parties should be bound to that agreement unless either the Legislature has evinced an intention to preclude a waiver of judicial remedies, or the statutory claim cannot be vindicated in an arbitral forum. *Mitsubishi Motors, supra,* 473 *U.S.* at 628, 105 *S.Ct.* at 3354–55, 87 *L.Ed.*2d at 456; *Young, supra,* 297 *N.J.Super.* at 616, 688 *A.*2d 1069. As to the first, there is no indication in the text or legislative histories of either the FLA or the LAD that restrict the use of an arbitral forum to pursue those claims. Indeed, in respect of the LAD, a judicial remedy was never perceived to be essential to vindicate such claims. *Garfinkel, supra,* 168 *N.J.* at 131, 773 *A.*2d 665 (citing *Ackerman v. Money Store,* 321 *N.J.Super.* 308, 324, 728 *A.*2d 873 (Law Div.1998)). The LAD always permitted such claims to be pursued through an administrative hearing proceeding. *N.J.S.A.* 10:5–13. Plainly, a jury trial is not applicable in the administrative setting.

Similarly, the FLA contains no legislative mandate that such claims be pursued solely in a judicial forum. Like the LAD, the FLA allows aggrieved persons to pursue their claims in an admin-

istrative proceeding. *N.J.S.A.* 34:11B–11. Concerning whether the statutory claims can be vindicated in an arbitral forum, there is no suggestion in either the FLA or LAD that their respective substantive remedies would be unavailable in an arbitral forum. Thus, in enforcing the agreement to arbitrate there are no identifiable impediments that would preclude vindication of plaintiff's statutory FLA and LAD claims. *Cf., Circuit City Stores, Inc. v. Adams,* 279 *F.*3d 889, 893–94 (9th Cir.2002), *cert. denied,* —— *U.S.* ——, 122 *S.Ct.* 2329, 153 *L.Ed.*2d 160 (2002) (determining that arbitration provision contained in employment application constituted contract of adhesion that required voiding because of exacerbating provisions visiting loss of substantial rights on its signatories, such as, limiting amount of punitive damages that may be awarded and imposing one-year statute of limitations); *Paladino v. Avnet Computer Techs., Inc.,* 134 *F.*3d 1054, 1060 (11th Cir. 1998) (refusing to compel arbitration of employee's Title VII claim, and finding that arbitration agreement authorizes arbitrator to award damages for breach of contract only and proscribes arbitral award of Title VII damages). Because the parties have agreed to arbitration of their disputes, plaintiff should be bound to that agreement.

## B.

Concerning the scope of the arbitration agreement, the remaining question is whether by signing the application for employment plaintiff agreed to submit her statutory FLA and LAD claims to arbitration. Plaintiff contends that even if the agreement to arbitrate constitutes a valid and legal contract, the language in the agreement was too vague and ambiguous to convey that plaintiff intended to waive her right to a jury trial on statutory claims concerning her employment. She makes the argument notwithstanding that the arbitration agreement stated that she "agree[d] to waive [her] statutory right to a jury trial in any action or proceeding relating to [her] employment with Sandvik."

A similar issue arose in *Garfinkel, supra,* a case decided after execution of the agreement to arbitrate here. In *Garfinkel,* we declined to uphold an agreement to arbitrate a statutory LAD claim contained in an employment contract. *Supra,* 168 *N.J.* at 127, 773 *A.*2d 665. There, the agreement contained no reference to waiver of the right to a jury trial. In addition to setting forth the employee's work obligations, the employment agreement in *Garfinkel* provided that " 'any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration.' " *Id.* at 128, 773 *A.*2d 665. We held that that language was too ambiguous to constitute an enforceable waiver of the employee's statutory causes of action. *Id.* at 127, 773 *A.*2d 665. In so holding, we stated: "The Court will not assume that employees intend to waive [their statutory rights] unless their agreements so provide in unambiguous terms." *Id.* at 135, 773 *A.*2d 665. However, we did not require a party to "refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights." *Ibid.* Instead, we instructed that "a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." *Ibid.*

In determining whether the arbitration agreement contained in the employment contract was sufficiently clear to constitute a waiver of the plaintiff's statutory causes of action, the *Garfinkel* Court cited approvingly to *Alamo, supra.* In *Alamo,* the Appellate Division considered the enforceability of an arbitration provision contained in an employee handbook that stated that claims that " 'Alamo has violated this [employee handbook] . . . shall be submitted to . . . arbitration.' " 306 *N.J.Super.* at 387, 703 *A.*2d 961. The court held that the arbitration clause applied only to disputes arising from the employee handbook, not to controversies arising under the LAD. *Id.* at 394, 703 *A.*2d 961. *Cf. Singer v. Commodities Corp.,* 292 *N.J.Super.* 391, 405–07, 678 *A.*2d 1165 (App.Div.1996) (finding that arbitration provision stating that employee agreed to arbitrate "any dispute" with employer was

sufficiently broad to encompass plaintiff's CEPA claim); *Young, supra,* 297 *N.J.Super.* at 613-14, 688 *A.*2d 1069 (holding that employee's CEPA and LAD claims were subject to arbitration because he agreed to arbitrate "any dispute, claim or controversy" with his employer). In *Garfinkel,* we concluded that because the arbitration provision stated that claims arising from the "Agreement or the breach thereof" would be subject to arbitration, the parties intended to arbitrate only those disputes arising from the employment agreement itself. *Supra,* 168 *N.J.* at 134, 773 *A.*2d 665.

In the circumstances of this case, the language in the arbitration agreement not only was clear and unambiguous, it was also sufficiently broad to encompass reasonably plaintiff's statutory causes of action. The arbitration agreement provides that plaintiff agreed to waive her right to a jury trial "in any action or proceeding relating to my employment with Sandvik" and that "all disputes relating to my employment with Sandvik or termination thereof" shall be subject to arbitration. Unlike the arbitration provisions contained in *Garfinkel* and *Alamo,* the arbitration provision here does not contain any limiting references. Its wording provided plaintiff with sufficient notice at the time she signed the agreement that all claims relating to employment with and termination from Sandvik would be resolved through arbitration. It also addressed specifically a waiver of the right to a jury trial, augmenting the notice to all parties to the agreement that claims involving jury trials would be resolved instead through arbitration. Thus, even though *Garfinkel* was decided after the parties executed the agreement to arbitrate in this matter and therefore does not control, the wording chosen here satisfied the spirit of that decision. Compelling arbitration under these circumstances is fair and equitable.

Finally, plaintiff claims that she did not knowingly and voluntarily waive her right to pursue her statutory claims in a judicial forum. Although plaintiff's level of sophistication is not central to our inquiry, *see Garfinkel, supra,* 168 *N.J.* at 136, 773

*A.*2d 665, we note nonetheless that plaintiff read and understood the Application for Employment before she signed it. She was not rushed in any way. Defendant provided plaintiff with the opportunity to ask questions about the application, to take the application home and thereby take time in considering it, and to consult with another person, including an attorney, before signing the document. As noted, although plaintiff asked questions about the position, she did not ask any questions about the application form either before or after she signed it and she declined the offer to take the application home or to consult with another party. Plaintiff was an educated businesswoman experienced in the field of human resources. She was provided with ample time and opportunity to review the application. We agree with the courts below that concluded that plaintiff knowingly and voluntarily agreed to arbitrate her statutory causes of action against her employer.

## IV.

The judgment of the Appellate Division is affirmed in all respects.

STEIN, J., dissenting.

The issue in this appeal is whether an employee should be bound by a mandatory arbitration agreement contained in an application form that she signed when she initially applied for a job with her employer. The majority has concluded that the arbitration agreement is enforceable. In my view, because of the vast disparity in bargaining power between an employer and a job applicant, a waiver of the right to jury trial and consent to arbitration contained in a job application form should be unenforceable as a matter of public policy.

## I

When plaintiff Maureen Martindale applied for a job with defendant Sandvik, Inc. in 1994, she was required to complete and

sign a form called "Application for Employment." The application included a standardized arbitration agreement that stated:

AS A CONDITION OF MY EMPLOYMENT, I AGREE TO WAIVE MY RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING RELATED TO MY EMPLOYMENT WITH SANDVIK.

I UNDERSTAND THAT I AM WAIVING MY RIGHT TO A JURY TRIAL VOLUNTARILY AND KNOWINGLY, AND FREE FROM DURESS OR COERCION.

I UNDERSTAND THAT I HAVE A RIGHT TO CONSULT WITH A PERSON OF MY CHOOSING, INCLUDING AN ATTORNEY, BEFORE SIGNING THIS DOCUMENT.

I AGREE THAT ALL DISPUTES RELATING TO MY EMPLOYMENT WITH SANDVIK OR TERMINATION THEREOF SHALL BE DECIDED BY AN ARBITRATOR THROUGH THE LABOR RELATIONS SECTION OF THE AMERICAN ARBITRATION ASSOCIATION.

As written, the agreement does not appear to require defendant to arbitrate any dispute that arises with an employee. Although plaintiff does not dispute that she was given an opportunity to ask questions about the application and to take it home for further review if she so desired, she recalls being told that she was required to sign page four of the application, which included the arbitration agreement.

Plaintiff subsequently was hired by defendant and worked as a Benefits Administrator until she went on disability leave because of complications with a pregnancy. Although plaintiff was granted a family and medical leave of absence after giving birth, she was informed before her leave commenced that her position was being eliminated as a result of a change in the organization of defendant's holding company. Plaintiff received her last disability payment in November 1996.

Subsequent to her termination, plaintiff filed claims under the New Jersey Family Leave Act, *N.J.S.A.* 34:11B–1 to –16, and the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 to –49. Defendant moved to stay the proceedings and to compel arbitration based on the arbitration agreement in the Application for Employment plaintiff signed prior to being hired. The trial court granted the motions and dismissed plaintiff's complaint without prejudice, but the court granted a stay pending appeal. The

Appellate Division affirmed the dismissal and the order compelling arbitration. We granted certification. 169 *N.J.* 610, 782 *A.*2d 427 (2001).

## II

### A

Our courts have been steadfast in declining to enforce contracts that violate the public policy of our State.

In *Kuzmiak v. Brookchester, Inc.,* 33 *N.J.Super.* 575, 588, 111 *A.*2d 425 (1955), the Appellate Division held that an exculpatory provision in an apartment lease between a landlord and tenant was "contrary to public policy." The provision stated:

> The Landlord shall in no event and under no circumstances be or become liable for any loss or damage which may occur to the tenant, his family, servants or guests or the property of either or any of them, however such damage or loss may arise and whether such property be contained in the demised premises, in the storage room, or in any other portion of said building or any place appurtenant thereto.
>
> [*Id.* at 579, 111 *A.*2d 425.]

The tenant sued the landlord based on personal injuries she sustained when she fell down the apartment's stairway, alleging that her fall resulted from the stairway's negligent construction. The trial court granted summary judgment for the defendant based on the exculpatory provision. The Appellate Division reversed, acknowledging its authority to invalidate exculpatory provisions in landlord and tenant contracts on public policy grounds. *Id.* at 585, 111 *A.*2d 425. In determining whether or not the provision at issue should be enforced, the court stated that a "basis for declaring invalid a bargain, otherwise valid, which exempts one from future liability, is where a relationship exists in which the parties have not equal bargaining power; and one of them must accept what is offered or be deprived of the advantages of the relation." *Ibid.* (citations omitted). The court observed that, "[u]nder present conditions, the comparative bargaining positions of landlords and tenants in housing accommodations within many areas of the state are so unequal that tenants are in no

position to bargain" and that "an exculpatory clause which purports to immunize the landlord from all liability would be contrary to public policy." *Id.* at 588, 111 *A.*2d 425.

In *Henningsen v. Bloomfield Motors, Inc.,* 32 *N.J.* 358, 386, 161 *A.*2d 69 (1960), this Court invalidated an express automobile warranty that sought to "limit [a] manufacturer's liability to replacement of defective parts, and which disclaim[ed] all other warranties, express or implied[.]" The plaintiff automobile buyer and his wife sought recovery from the defendant automobile manufacturer and dealer for personal injuries sustained while driving an allegedly defective automobile soon after it was purchased. Although recognizing the basic principle of the freedom of parties to contract, we concluded that, "in the framework of modern commercial life and business practices, such rules cannot be applied on a strict, doctrinal basis." *Ibid.* We observed:

> The conflicting interests of the buyer and seller must be evaluated realistically and justly, giving due weight to the social policy evinced by the Uniform Sales Act, the progressive decisions of the courts engaged in administering it . . . . [and] the bargaining position occupied by the ordinary consumer in such an economy. The history of the law shows that legal doctrines, as first expounded, often prove to be inadequate under the impact of later experience. In such case, the need for justice has stimulated the necessary qualifications or adjustments.
>
> [*Ibid.* (citations omitted).]

Although we acknowledged the argument that the buyer had accepted the exclusion of liability for personal injuries in return for the replacement of defective parts, we determined that "[a]n instinctively felt sense of justice cries out against such a sharp bargain." *Id.* at 388, 161 *A.*2d 69. We concluded that a standardized form disclaiming an implied warranty of merchantability when there was such a "gross inequality of bargaining position[s]," was "so inimical to the public good as to compel an adjudication of its invalidity." *Id.* at 391, 404, 161 *A.*2d 69.

In *Vasquez v. Glassboro Service Ass'n, Inc.,* 83 *N.J.* 86, 104–05, 415 *A.*2d 1156 (1980), we invalidated a provision in a migrant farm worker's employment contract. The plaintiff farm worker came to New Jersey from Puerto Rico to perform seasonal farm work and resided in the living quarters at the defendant farmer's association

labor camp. On the day the worker was discharged he was informed that, pursuant to his employment contract, he would have to gather his belongings and leave immediately. He was not allowed to remain at the labor camp overnight. In assessing the validity of the eviction provision in the employment contract, we acknowledged the inequality of bargaining power between migrant farmworkers and their employers. *Id.* at 103, 415 *A.*2d 1156 (citing *Kuzmiak* and noting that "[a] migrant farmworker has even less bargaining power than a residential tenant"). We analogized a migrant farmworker with "a consumer who must accept a standardized form contract to purchase needed goods and services." *Ibid.* We found that "[n]either farmworkers nor consumers negotiate the terms of their contracts," and "[i]n both instances, the contracts affect many people as well as the public interest." *Ibid.* In finding the employment contract unenforceable we stated:

> The unconscionability of the contract inheres not only in its failure to provide a worker with a reasonable opportunity to find alternative housing, but in its disregard for his welfare after termination of his employment. The inherent inequity of the contract arouses a sense of injustice and invokes the equitable powers of the courts.
>
> [*Id.* at 104, 415 *A.*2d 1156.]

We also have addressed whether unconscionable provisions in contracts should be invalidated based on public policy concerns in several other contexts. *See Ellsworth Dobbs, Inc. v. Johnson,* 50 *N.J.* 528, 555, 236 *A.*2d 843 (1967)(invalidating provision in contract for purchase of realty that obligated owners to pay broker's commission where "consummation of sale [was] frustrated by the inability or the unwillingness of the buyer"); *Solari Industries, Inc. v. Malady,* 55 *N.J.* 571, 576, 264 *A.*2d 53 (1970)(holding that noncompetitive agreements in employment contracts must be reasonable under all relevant circumstances in order to prevent injury to public); *Shell Oil Co. v. Marinello,* 63 *N.J.* 402, 409, 307 *A.*2d 598 (1973), *cert. denied,* 415 *U.S.* 920, 94 *S.Ct.* 1421, 39 *L.Ed.*2d 475 (1974)(invalidating termination provision in oil company's lease and dealer agreement because grossly "disproportionate bargaining position" between parties created unfair agreement

that violated public policy); *Karlin v. Weinberg,* 77 *N.J.* 408, 423, 390 *A.*2d 1161 (1978)(refusing to enforce noncompetitive agreement in employment contract beyond period of time needed to protect employer's practice); *Gladden v. Cadillac Motor Car Div.,* 83 *N.J.* 320, 334–35, 416 *A.*2d 394 (1980) (invalidating as unconscionable warranty between consumer and tire manufacturer that limited manufacturer's liability to refund for or replacement of damaged tires).

### B

The majority notes that many of the courts that "have considered the adhesive effect of arbitration provisions in employment applications or employment agreements ha[ve] upheld the arbitration provision contained therein despite potentially unequal bargaining power between employer and employee." *Ante* at 90, 800 *A.*2d at 880. We note, however, that two recent federal court decisions have invalidated similar agreements based on the inherently unequal bargaining positions of employers and prospective employees.

The Ninth Circuit invalidated a mandatory arbitration agreement contained in an employment application in *Circuit City Stores, Inc. v. Adams,* 279 *F.*3d 889 (9th Cir.2002), *cert. denied,* —— *U.S.* ——, 122 *S.Ct.* 2329, 153 *L.Ed.*2d 160 (2002). The plaintiff signed the agreement when applying for a job as a sales clerk with Circuit City. The court determined that the arbitration agreement was unconscionable because it was a contract of adhesion:

> Circuit City, which possesses considerably more bargaining power than nearly all of its employees or applicants, drafted the contract and uses it as its standard arbitration agreement for all of its new employees. The agreement is a prerequisite to employment, and job applicants are not permitted to modify the agreement's terms they must take the contract or leave it.
>
> [*Id.* at 893.]

The court also noted that the agreement, which required only the employees but not Circuit City to arbitrate their claims, lacked the " 'modicum of bilaterality' " required for contracts to be enforce-

able under California law. *Id.* at 894 (quoting *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 692 (2000)). In addition to being a "one-sided obligation," the agreement at issue also restricted employees from seeking punitive damages and imposed a strict one-year statute of limitations for legal disputes. The agreement also explicitly required employees to share the cost of an arbitrator's compensation.

In *Cooper v. MRM Investment Co.*, 199 F.Supp.2d 771 (M.D.Tenn.2002), a Tennessee federal district court held that a mandatory arbitration agreement that an employee was required to sign in order to obtain employment was a contract of adhesion and unenforceable under Tennessee law. The employee was hired to work for a Kentucky Fried Chicken (KFC) franchise that was owned by MRM Investment Company (MRM). The plaintiff filed a lawsuit against MRM, alleging that one of the MRM owners sexually harassed her and that she was constructively discharged. Both claims were dismissed pursuant to the arbitration agreement that was included in her employment contract. Although the agreement signed by the employee does not appear to have been included in a job application, the court's discussion of the burdens facing prospective employees helps underscore the unfairness of mandating such concessions in employment applications. The court stated that

> [t]his agreement is a form contract, drafted by KFC's attorneys, offered to Plaintiff on a "take it or leave it" basis. Plaintiff had no choice. She either had to accept the job based on the terms outlined in the KFC Arbitration Agreement, or she had to find another job.... Especially in today's economy, the choice to "leave it" often amounts to no choice at all. Indeed, if she "leaves it," she probably forgoes the opportunity for employment.
>
> [*Cooper, supra*, 199 F.Supp.2d at 778.]

The court further recognized that "[t]he pressure facing a prospective employee coupled with the uniform incongruity in bargaining positions between the employer and employee" distinguished the situation from other contexts in which arbitration agreements had been upheld. *Ibid.* Moreover, the court noted that the defendant employer "imposed [the agreement] on a

prospective employee precisely at the time that he or she is most willing to sign anything just to get a job." *Cooper, supra,* 199 *F.Supp.*2d at 780.

The agreements in *Cooper* and in the matter before us both provide that the American Arbitration Association's (AAA) labor arbitration rules would govern any proceeding that arose because of a dispute between employer and employee. Although neither agreement specifically refers to the parties' respective responsibilities for fees and costs, the court in *Cooper* pointed out that the AAA's labor arbitration rules require the parties to pay certain fees and costs. *Cooper, supra,* 199 *F.Supp.*2d at 781. Each party must pay a $100 initial administrative fee. AAA Labor Arbitration Rule 43. Moreover, unless they agree otherwise, both parties are responsible for the arbitrator's compensation. *Ibid.* As acknowledged by the court in *Cooper,* "[r]equiring a party to pay fees and costs, over and above what that party would have to pay in a court, may deprive that party of the right to vindicate his or her rights." *Cooper, supra,* 199 *F.Supp.*2d at 781. Furthermore, in *Cole v. Burns International Security Services,* 105 *F.*3d 1465, 1485 (1997), the Court of Appeals for the District of Columbia held that an employee "could not be required to agree to arbitrate his public law claims as a condition of employment if the arbitration agreement required him to pay all or part of the arbitrator's fees and expenses." Although the United States Supreme Court has held that requiring a plaintiff to partially fund the cost of arbitration does not render an arbitration clause automatically unenforceable, *Green Tree Financial Corp.-Alabama v. Randolph,* 531 *U.S.* 79, 92, 121 *S.Ct.* 513, 522–23, 148 *L.Ed.*2d 373, 384 (2000), it is clear that such costs could impose a significant burden on an employee's ability to prosecute a claim.

## C

In enacting the Federal Arbitration Act (FAA), "Congress declared a national policy favoring arbitration" for dispute resolution and "withdrew the power of the states to require a judicial

forum for the resolution of claims [that] the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating,* 465 *U.S.* 1, 10, 104 *S.Ct.* 852, 858, 79 *L.Ed.*2d 1, 12 (1984). As acknowledged by the majority, the FAA specifically allowed states to continue to regulate contracts, including contracts containing arbitration agreements, based on general contract principles. *Ante* at 85, 800 *A.*2d at 877. Therefore, as observed by the court in *Circuit City Stores, supra,* its decision to invalidate the arbitration agreement in an employee application was not inconsistent with the FAA because "unconscionability is a defense to contracts generally and does not single out arbitration agreements for special scrutiny." 279 *F.*3d at 895. (citing *Doctor's Assoc. Inc. v. Casarotto,* 517 *U.S.* 681, 687, 116 *S.Ct.* 1652, 1657, 134 *L.Ed.*2d 902, 909 (1996), where United States Supreme Court "specifically mentioned unconscionability as a 'generally applicable contract defense[ ]' that may be raised consistent with § 2 of the FAA").

## III

The narrow question for the Court is whether we should allow employers to extract concessions in a job application form, such as a waiver of the right to a jury trial, from prospective employees. Contrary to the majority's conclusion, I would hold that the standardized arbitration agreement that job applicants were required to sign as a prerequisite to consideration for employment with defendant is unenforceable as a matter of public policy.

Based on plaintiff's education and experience in human resources, as well as the fact that plaintiff was given an opportunity to review and ask questions about the application, the majority concludes that the application was not offered on a take-it-or-leave-it basis. *Ante* at 91, 800 *A.*2d at 881. Moreover, the majority points to the absence of any evidence that the employer would have rejected plaintiff's application if she had refused to sign the agreement. Irrespective of plaintiff's alleged sophistication, that defendant possessed considerably more bargaining pow-

er than did plaintiff as a prospective employee is obvious. Our common experience informs us that individuals faced with a need to find employment would be unlikely to refuse to sign a pre-printed employment application containing a mandatory arbitration clause if signing the form was a precondition to further consideration for the job. Moreover, as was the case in *Circuit City Stores, supra,* because the arbitration clause in defendant's application form lacked mutuality, plaintiff's employer "was free to bring suit in court or arbitrate any dispute with its employees." 279 *F.*3d at 893. The lack of mutuality in the agreement exacerbates its inequity.

On prior occasions we have determined that public policy demands invalidation of agreements resulting from inequitable bargaining positions. See *Vasquez, supra,* 83 *N.J.* at 104, 415 *A.*2d 1156 (stating that "[t]he inherent inequity of [a] contract arouses a sense of injustice and invokes the equitable powers of the courts"). In *Kuzmiak, supra,* the court took judicial notice of an ongoing housing shortage in recognizing that the bargaining power between landlords and tenants was "decidedly unequal." 33 *N.J.Super.* at 587, 111 *A.*2d 425. In the subsequent *Vasquez* opinion, this Court held that "[a] migrant farmworker has even less bargaining power than a residential tenant." *Vasquez, supra,* 83 *N.J.* at 103, 415 *A.*2d 1156.

In concluding that the insertion of a mandatory arbitration agreement in an application for employment does not violate our state's public policy, the majority asserts that we previously have held that national and state policies favor arbitration. *Ante* at 91–92, 800 *A.*2d at 881. However, to hold that a mandatory arbitration agreement in an employment application violates public policy does not disfavor arbitration, but rather recognizes "the inherent inequity," *Vasquez, supra,* 83 *N.J.* at 104, 415 *A.*2d 1156, in requiring an individual to sign an agreement that substantially alters his or her rights at such a particularly vulnerable time when they are under pressure to find employment. Moreover, the two cases relied on by the majority to illustrate that arbitration is a

favored process for dispute resolution in our state, *Barcon Associates v. Tri–County Asphalt Corp.*, 86 *N.J.* 179, 186–87, 430 *A.2d* 214 (1981) and *Marchak v. Claridge Commons, Inc.*, 134 *N.J.* 275, 282, 633 *A.2d* 531 (1993), did not implicate an arbitration clause imposed by a party with superior bargaining power. As the court observed in *Cooper, supra,* "[t]he pressure facing a prospective employee coupled with the uniform incongruity in bargaining positions between the employer and employee" distinguishes the situation from other contexts in which arbitration agreements have been validated and upheld. 199 *F.Supp.*2d at 779.

## IV

In my view, public policy requires this Court to invalidate a mandatory arbitration agreement, or any analogous agreement of consequence, that a prospective employee is forced to sign as a condition of being considered for a job. "Grossly unfair contractual obligations resulting from the use of such expertise or control by the one possessing it, which result in assumption by the other contracting party of a burden which is at odds with the common understanding of the ordinary and untrained member of the public, are considered unconscionable and therefore unenforceable." *Ellsworth Dobbs, supra,* 50 *N.J.* at 554, 236 *A.2d* 843. Although the issue is not before us, I would assume that after an employee is hired an employer would be free to enter into an employment agreement that provides for arbitration of disputes, provided no disabling unfairness is implicated in the negotiation or terms of the agreement. We should not countenance a practice by which employers take unfair advantage of prospective employees by requiring their consent to arbitration agreements contained in printed employment application forms as a precondition to being considered for a job.

Justice LONG and Justice ZAZZALI join in this opinion.

*For affirmance*—Chief Justice PORITZ and Justices COLEMAN, VERNIERO and LaVECCHIA—4.

*For reversal*—Justices STEIN, LONG and ZAZZALI—3.