**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2374-17T3

D.M.,

    Plaintiff-Appellant,

v.

SAME DAY DELIVERY SERVICE,
INC. and ASHLEY MARTINEZ,

    Defendants-Respondents.

_____

> Argued August 14, 2018 — Decided August 23, 2018
>
> Before Judges Sumners and Gilson.
>
> On appeal from Superior Court of New Jersey,
> Law Division, Passaic County, Docket No.
> L-3203-17.
>
> Mark Mulick argued the cause for appellant.
>
> Jamie S. Felsen (Milman Labuda Law Group PLLC)
> of the New York bar, admitted pro hac vice,
> argued the cause for respondents (Milman
> Labuda Law Group PLLC, attorneys; Netanel
> Newberger, of counsel and on the brief; Jamie
> S. Felsen, on the brief).

PER CURIAM

    This appeal involves a dispute over whether plaintiff must

arbitrate her claim that she was subject to a hostile work

environment and terminated because of her sex and sexual orientation. Plaintiff appeals from a January 19, 2018 order dismissing her complaint and directing her to arbitrate her claim. We affirm because plaintiff executed a valid and enforceable agreement to arbitrate any dispute related to her employment or the termination of her employment.

I.

Plaintiff worked for defendant Same Day Delivery, Inc. (Same Day) as a delivery person for just over two months from June to August 2017. She was hired on June 6, 2017. On that day, she responded to an internet notification for potential employment. She then met with an employee of Same Day, who offered her a position as a driver at a facility in Elizabeth. Later that day, plaintiff was requested to review and complete certain forms through a website. Plaintiff reviewed and electronically signed a number of documents connected to her employment, including an "Arbitration Agreement."

The Arbitration Agreement was a one-page document consisting of six paragraphs. Among other things, the Agreement provided:

> In consideration of my assignment/employment
> with the Same Day Delivery Inc., ("Company")
> its promise to arbitrate all employment-
> related disputes and my receipt of the
> compensation, pay raises and other benefits
> paid to me by the Company and or its PEO, at
> present and in the future, I agree that any

and all controversies, claims, or disputes with anyone (including the Company and any employee, officer, director, shareholder or benefit plan of the Company in their capacity as such or otherwise) arising out of, relating to, or resulting from my assignment and or employment with the Company or the termination of my assignment or employment with the Company, including any breach of this agreement, shall be subject to binding arbitration under the Federal Arbitration Act and pursuant to New York law. Disputes which I agree to arbitrate, and thereby agree to waive any right to a trial by jury, include any statutory claims under state or federal law . . . .

The agreement also stated:

Furthermore, I agree that any controversy, claim, or dispute covered by this Policy will be arbitrated on an individual basis. No controversy, claim, or dispute between an employee and Company may be consolidated or joined with a dispute between any other employee and Company nor may an individual employee seek to bring his/her dispute on behalf of other employees as a class or collective action. . . . Accordingly, except as provided for by the Rules and this agreement, neither the Company nor I will be permitted to pursue court action regarding claims that are subject to arbitration.

Finally, the last paragraph of the Arbitration Agreement stated:

I also understand that I have a right to consult with a person of my choosing, including an attorney, before signing this document. I am agree to waive my voluntarily and knowingly, and free from any duress or coercion whatsoever to a trial by a trial

3

judge or jury as well as my right to participate in a class or collective action.

Plaintiff began work on June 11, 2017, and was terminated on August 21, 2017. On September 25, 2017, plaintiff filed a complaint against Same Day and one of its managers in the Superior Court. The complaint asserted that the manager made "sexually provocative comments about plaintiff's body" and subjected her to a "hostile work environment based on her sex and sexual orientation." Plaintiff also alleged that her work performance was unfairly criticized and she was fired because she rejected the manager's advances. Thus, plaintiff contended that the manager and Same Day violated New Jersey's Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, and she sought damages, including lost wages, emotional distress, and attorney's fees.

In response, Same Day and the manager moved to dismiss the complaint and compel arbitration. The trial court heard oral arguments and, on January 19, 2018, entered an order directing plaintiff to arbitrate her claims and dismissing the complaint. The court stated its reasons for the ruling on the record. The court explained that while the last sentence of the Arbitration Agreement "doesn't make sense," in at least two other places the agreement stated that arbitration was plaintiff's sole remedy and that plaintiff waived her right to a jury trial. The trial court

4

also reasoned that an ordinary person reading the Arbitration Agreement would understand that she or he was agreeing to arbitrate. Moreover, the agreement advised plaintiff to consult with someone who could explain its terms if she had any questions.

## II.

Plaintiff appeals from the January 19, 2018 order. She argues that the trial court erred because (1) the Arbitration Agreement was unclear and ambiguous; (2) there was no consideration for the agreement; and (3) plaintiff did not get any advice concerning its meaning and, therefore, signed the agreement without understanding it. We are not persuaded by these arguments, because (1) the Arbitration Agreement unambiguously stated multiple times that plaintiff agreed to give up her right to bring a claim in court and, instead, agreed to arbitrate any disputes concerning her employment or the termination of her employment; (2) the agreement was clearly presented as a condition of her employment; and (3) plaintiff decided to not "consult with a person of [her] choosing, including an attorney, before signing" the agreement.

We begin our analysis by identifying our standard of review and the applicable law. The validity of an arbitration agreement is a question of law, which we review de novo. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014); Barr v. Bishop Rosen & Co., 442 N.J. Super. 599, 605 (App. Div. 2015).

The Arbitration Agreement signed by plaintiff states that it is governed by "the Federal Arbitration Act and pursuant to New York law."  The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, applies to

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . .
>
> [9 U.S.C. § 2.]

Here, plaintiff is a New Jersey resident and Same Day is a company involved in commerce.  Same Day does not expressly state that its business involves interstate commerce, but plaintiff does not dispute that the FAA governs.  Neither party cites to New York law.  Instead, Same Day cites to the FAA and New Jersey case law and plaintiff cites to New Jersey case law concerning the enforceability of arbitration agreements.  Because neither party points to any conflict between the FAA and New York law or between New Jersey and New York law on the issues relevant to this appeal, we use the FAA and New Jersey law.

The FAA and "the nearly identical New Jersey Arbitration Act, N.J.S.A. 2A:23B-2 to -32, enunciate federal and state policies favoring arbitration."  Atalese, 219 N.J. at 440.  Under both the FAA and New Jersey law, arbitration is fundamentally a matter of contract.  9 U.S.C. § 2; NAACP of Camden Cty. E. v. Foulke Mgmt.

<u>Corp.</u>, 421 N.J. Super. 404, 424 (App. Div. 2011). "The FAA 'permits states to regulate . . . arbitration agreements under general contract principles,' and a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'" <u>Atalese</u>, 219 N.J. at 441 (quoting <u>Martindale v. Sandvik, Inc.</u>, 173 N.J. 76, 85 (2002), and 9 U.S.C. § 2).

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" <u>Id.</u> at 442 (quoting <u>NAACP of Camden Cty. E.</u>, 421 N.J. Super. at 424). Accordingly, to be enforceable, an arbitration agreement must be clear in stating that the parties are agreeing to arbitrate and that the parties are agreeing to give up the right to pursue a claim in court. In that regard, our Supreme Court has explained:

> Mutual assent requires that the parties have an understanding of the terms to which they have agreed. "An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights." . . . "By its very nature, an agreement to arbitrate involves a waiver of a party's right to have her claims and defenses litigated in court." . . . But an average member of the public may not know — without some explanatory comment — that arbitration is a substitute for the right to have one's claim adjudicated in a court of law.
>
> . . . .

> No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights. . . . Arbitration clauses ⸺ and other contractual clauses ⸺ will pass muster when phrased in plain language that is understandable to the reasonable [person].
>
> [*Id.* at 442, 444 (citations omitted).]

Here, the Arbitration Agreement was clear in stating that plaintiff was agreeing to arbitrate any disputes concerning her employment or termination of her employment with Same Day. In that regard, the Arbitration Agreement expressly stated:

> I agree that any and all controversies, claims, or disputes with anyone (including the Company and any employee, officer, director, . . . of the Company . . .) arising out of, relating to, or resulting from my assignment and or employment with the Company or the termination of my assignment or employment with the Company . . . shall be subject to binding arbitration . . . .

The agreement also was clear in stating that plaintiff was giving up the right to pursue a jury trial or court action:

> Disputes which I agree to arbitrate, and thereby agree to waive any right to a trial by jury, include any statutory claims under state or federal law . . . .

Moreover, the agreement repeatedly stated that arbitration was the exclusive mechanism for resolving disputes and that the arbitration decision would be final and "binding."

Plaintiff first argues that certain sentences in the agreement were unclear and ambiguous thereby making the entire agreement incomprehensible. In support of that argument, plaintiff points to several parts of the Arbitration Agreement and argues that the language used was vague or ambiguous. In particular, plaintiff highlights the last sentence of the agreement, which states: "I am agree to waive my voluntarily and knowingly, and free from any duress or coercion whatsoever to a trial by a trial judge or a jury as well as my right to participate in a class or collective action." Plaintiff also points out that the agreement incorrectly cites to a statute as "Title VII of the Civil Rights Acts of 19866," and that the agreement contained undefined terms such as "PEO" and "Rules." Finally, plaintiff argues that the agreement does not explain the difference between arbitration and a trial by jury, including the difference in discovery, nor does the agreement explain the procedure for appellate review of an arbitrator's decision.

While several sentences in the Arbitration Agreement are poorly drafted, those sentences do not make the agreement ambiguous because the remainder of the document is clearly written. In that regard, it expressly states that plaintiff is agreeing to arbitrate any employment dispute and is giving up the right to bring a claim in court. Indeed, out of the six paragraphs of the full-page

Arbitration Agreement, plaintiff points to several poorly written sentences. The remainder of the Arbitration Agreement is clear in explaining that plaintiff was agreeing to arbitrate. The poorly written sentences, moreover, cannot be read to suggest that arbitration was not the exclusive forum. At best, those sentences fail to reiterate that plaintiff was agreeing to voluntarily and freely waive her right to trial by a jury or a judge, and to pursue a class action.

There also is no support in the record for plaintiff's second argument that there was no consideration for the Arbitration Agreement. Plaintiff was hired on June 6, 2017. That same day, plaintiff was advised to log on to a website to review and electronically sign several forms to complete her employment application. Plaintiff acknowledges that she logged on to the website, reviewed the documents, and signed the Arbitration Agreement. An offer of employment or continued employment is adequate consideration for an arbitration agreement. Martindale, 173 N.J. at 86. That plaintiff was offered the job before signing the Arbitration Agreement several hours later is not material on this record.

Finally, there is no support for plaintiff's last argument that she was rushed into signing the Arbitration Agreement and, therefore, did not understand it. The Arbitration Agreement

10

expressly advised plaintiff that she had the right to consult with "a person of [her] choosing, including an attorney, before signing the" agreement. Plaintiff does not identify anyone from Same Day who allegedly rushed her into signing the Arbitration Agreement. Instead, plaintiff acknowledges "that the [A]rbitration [A]greement states that I had a right to speak to a person of my choosing, including an attorney, before signing the document. However, I had no time to do that, nor did I have funds to hire an attorney." Thus, plaintiff's certification admits that she was the one who decided that she had no time to consult with anyone and no funds to hire an attorney.

In short, although the arbitration agreement in this case was not a well-crafted document, it was sufficiently clear in explaining that plaintiff was agreeing to arbitrate and that she was giving up her right to pursue a claim in court. Thus, by dismissing her complaint and directing arbitration, plaintiff will be able to pursue her claim in the forum she agreed to; that is, an arbitration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2374-17T3