**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0379-24

JAMAR WILSON,

Plaintiff-Respondent,

v.

US MED-EQUIP, LLC,
TOM GARRITY, and
MICHAEL STANKOSKI,

Defendants-Appellants.

______________________________

Submitted March 27, 2025 – Decided April 4, 2025

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0289-24.

Kirmser, Cunningham, & Skinner, attorneys for appellants (Jonathan E. Hill, on the briefs).

McOmber McOmber & Luber, PC, attorneys for respondent (Matthew A. Luber and Gaetano J. DiPersia, on the brief).

PER CURIAM

Defendants US Med-Equip, LLC (USME), Tom Garrity, and Michael Stankoski appeal from the August 22, 2024 order denying their motion to compel arbitration. For the reasons discussed in this opinion, we vacate the order and remand for reconsideration after the completion of limited discovery relating to the formation of the Arbitration Agreement.

Plaintiff Jamar Wilson was employed as a customer service representative for USME, a medical equipment supply company, for approximately one year before he was terminated on December 13, 2023. He was previously employed by Freedom Medical, which USME acquired in 2022.

On November 30, 2023, plaintiff received a memo from USME's human resources department to all "active employees" stating:

> [USME] has implemented an Arbitration Agreement for all employees as a way to ensure workplace disputes[,] which cannot be resolved informally are handled fairly, efficiently[,] and on an individual basis. The Arbitration Agreement requires employees to arbitrate covered claims to binding arbitration, and [USME] will also agree to submit all covered claims regarding each employee to binding arbitration. The Arbitration Agreement is a condition of continued employment with [USME]. Please read the important document carefully.
>
> Arbitration is not a substitute for our [c]omplaint [p]rocedures [p]olicy. You should continue to take advantage of the [c]omplaint [p]rocedures [p]olicy, as needed, in order to bring forward any concerns or

complaints you may have and to get them resolved. However, the Arbitration Agreement will apply to any covered claims that are not resolved through our [c]omplaint [p]rocedures [p]olicy or other complaint/reporting procedures.

Once you have reviewed it, please acknowledge its understanding in Paycom. If you have questions regarding the Arbitration Agreement, please contact Human Resources at [***-***-****] or by emailing the HR [s]ervice desk at [**@*********]com.

In relevant part, the Arbitration Agreement provides:

This Arbitration Agreement is a contract and covers important issues relating to your rights. It is your sole responsibility to read and understand it. You are free to seek assistance from independent advisors of your choice outside [of USME] or to refrain from doing so if that is your choice.

**1. How This Agreement Applies.** . . .

[T]his Agreement applies to any dispute arising out of or related to [the e]mployee's . . . application or selection for employment, employment, and/or termination of employment with [USME] . . . . [T]his Agreement applies to any dispute, past, present, or future, that [USME] may have against you or that you may have against: (1) [USME]; [or] (2) its officers, directors, principals, . . . employees, or agents. . . . **All disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration and not by way of court or jury trial.** This Agreement is a condition of [e]mployee's employment with [USME] and does not alter [e]mployee's at-will employment status. . . .

> Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration, including without limitation, to disputes arising out of or relating to the . . . employment relationship, or the termination of that relationship[,] . . . retaliation, discrimination, or harassment, . . . [federal and] state statutes or regulations . . . and all other federal or state legal claims . . . arising out of or relating to your . . . employment, or the termination of employment.
>
> . . . .
>
> **11. <u>Enforcement Of This Agreement.</u>** You have the right to consult with counsel of your choice concerning this Agreement or any aspect of the arbitration proceeding. . . .
>
> **AGREED BY YOU AND [USME]**
>
> **BY SIGNING THIS ARBITRATION AGREEMENT . . . YOU ARE AGREEING TO AND ACCEPTING THIS AGREEMENT, AND YOU AND [USME] ARE GIVING UP YOUR RIGHTS TO A COURT OR JURY TRIAL AND AGREEING TO ARBITRATE CLAIMS AND DISPUTES COVERED BY THIS AGREEMENT.**

Plaintiff initially refused to sign the Arbitration Agreement and told Stankoski, his regional operations manager, he "was not comfortable signing the agreement because [he] did not understand what [he] was signing." Plaintiff alleges Stankoski contacted him every day "asking [him] to sign the

[A]rbitration [A]greement," and plaintiff "repeatedly told [Stankoski] that [he] did not understand what the agreement meant and that [he] would not be signing it."

On December 12, Stankoski called plaintiff to a meeting "after the conclusion of [his] scheduled shift." During the meeting, plaintiff "was told that if [he] did not sign the agreement, [his] employment with [USME] would be in jeopardy." "Fearful of losing [his] job, [plaintiff] signed the agreement. [He] was still unsure of what the agreement meant at the time [he] signed it."

The following day, plaintiff was terminated because he "was involved in an incident with a civilian while driving a company vehicle."[1] Plaintiff contends this reason was "pretextual" because "[he] was the victim of a road rage incident in which an individual accosted him at a gas station."

On March 7, 2024, plaintiff filed this action asserting claims for "disparate treatment [and] hostile work environment discrimination due to race" and retaliation pursuant to the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -50. Plaintiff alleges Garrity, his direct supervisor, made "racially charged remarks" to him and engaged in other discriminatory, harassing, and retaliatory conduct. He alleges Stankoski and USME failed to

[1] The record does not indicate when the alleged incident occurred.

address Garrity's conduct and retaliated against him "by terminating him after he complained of the discrimination and harassment."

Defendants moved to compel arbitration. On August 22, 2024, after hearing oral argument, the court entered an order denying defendants' motion supported by a written opinion. The court determined "the Arbitration Agreement as a contract[, is] not unduly complex," but is unenforceable. It reasoned

> the factor of economic compulsion outweighs the relatively straight-forward subject matter of the agreement. As to relative bargaining position, the [c]ourt grants [p]laintiff the inference that he risked losing his employment and livelihood had he not signed the agreement. This imbalance of power left [p]laintiff at a disadvantage. Further, [p]laintiff did not have any input into the terms of the agreement or draft any of its language. As to the public interest, the [NJLAD] is one of the most comprehensive anti-discrimination laws in the country. Public policy favors allowing [p]laintiff's claims to continue in his forum of choice to be tried by a jury of his peers.
>
> The [c]ourt finds this [A]rbitration [A]greement to be the result of an "overwhelmingly unequal bargaining power" between employer and employee. Weighing all of the factors and considering the totality of the circumstances, the court finds that the [A]rbitration [A]greement was a contract of adhesion. In so finding, the [c]ourt holds that the [A]rbitration [A]greement will not bar [p]laintiff's NJLAD claims from being pursued in this jurisdiction. . . . Should later discovery or depositions serve to contradict

> [p]laintiff's account, the issue of the [A]rbitration [A]greement may become the subject of further motion practice.

On appeal, defendants contend the trial court misapplied the standard for unconscionability. Specifically, they argue the court incorrectly determined the Arbitration Agreement is unenforceable because it is a contract of adhesion. Instead, a determination that an agreement is a contract of adhesion should be "the beginning, not the end, of the inquiry." Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 354 (1992). Defendants argue the court erred by concluding inequity in bargaining power alone was sufficient to find unconscionability. They also contend the court incorrectly found "[p]ublic policy favors allowing [p]laintiff's claims to continue in his forum of choice to be tried by a jury of his peers." Finally, defendants claim the contract was supported by adequate consideration.

Plaintiff contends the Arbitration Agreement is unconscionable and not supported by adequate consideration because he was pressured into signing it as a condition of employment and was terminated the next day. He argues discovery is necessary to address these issues. Specifically, "[w]hen did [d]efendants determine that [p]laintiff would be terminated? At worst, [d]efendants had made that decision just prior to [p]laintiff signing, and at very

best, the call was made immediately thereafter. Either timeline is damning to [d]efendants, and discovery is necessary to uncover the truth."

The enforceability of an arbitration agreement is a question of law, which we review de novo. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020). Under both the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, and the New Jersey Arbitration Act (NJAA), arbitration is fundamentally a matter of contract. 9 U.S.C. § 2; NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011). Arbitration agreements are subject to customary contract law principles. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014).

A valid and enforceable agreement requires: (1) consideration; (2) a meeting of the minds based on a common understanding of the contract terms; and (3) unambiguous assent. See id. at 442-45. Consequently, to be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified. Id. at 442-43; see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319-20 (2019).

"No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Atalese, 219 N.J. at 444. If, "at least in some general and sufficiently broad way," the language of the clause conveys

arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced. Id. at 447; see also Morgan v. Sanford Brown Inst., 225 N.J. 289, 309 (2016) ("No magical language is required to accomplish a waiver of rights in an arbitration agreement.").

"In reviewing such orders, we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013) (citing Hojnowski v. Vans Skate Park, 187 N.J. 323, 341-42 (2006)). The FAA and "the nearly identical [NJAA], enunciate federal and state policies favoring arbitration." Atalese, 219 N.J. at 440 (citations omitted). That preference, "however, is not without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001). "[T]he FAA 'permits states to regulate . . . arbitration agreements under general contract principles,' and a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Atalese, 219 N.J. at 441 (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)).

"The first step in considering [a] challenge to enforcement of an arbitration requirement must be to determine whether a valid agreement exists." Martindale, 173 N.J. at 83; see also N.J.S.A. 2A:23B-6(b). In determining

validity, "arbitration agreements may not be subjected to more burdensome contract formation requirements than [those] required for any other contractual topic." Martindale, 173 N.J. at 83. As such, "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA, and in New Jersey, "[i]t is well settled that courts 'may refuse to enforce contracts that are unconscionable.'" Muhammad v. Cnty. Bank of Rehoboth Beach, 189 N.J. 1, 12, 15 (2006) (emphasis omitted) (first quoting Dr.'s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996); and then quoting Saxon Constr. & Mgmt. Corp. v. Masterclean of N.C., Inc., 273 N.J. Super. 231, 236 (App. Div. 1994)).

A contract of adhesion is "[a] contract where one party . . . must accept or reject the contract." Rudbart, 127 N.J. at 353 (alterations in original) (quoting Vasquez v. Glassboro Serv. Ass'n, 83 N.J. 86, 104 (1980)). "[T]he essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." Rudbart, 127 N.J. at 353.

"The determination that a contract is one of adhesion, however, 'is the beginning, not the end, of the inquiry . . . .'" Ibid. (quoting Rudbart, 127 N.J. at

354). A contract of adhesion is not by its nature alone unenforceable. Rudbart, 127 N.J. at 354. The burden of proving the defense of unconscionability is on the party challenging the enforceability of the agreement. Martindale, 173 N.J. at 91.

In Delta Funding Corp. v. Harris, our Supreme Court stated,

> [t]he defense of unconscionability, specifically, calls for a fact-sensitive analysis in each case, even when a contract of adhesion is involved. [Muhammad, 189 N.J. at 15-16]. This Court has recognized that contracts of adhesion necessarily involve indicia of procedural unconscionability. Id. at 15. We have identified, therefore, four factors as deserving of attention when a court is asked to declare a contract of adhesion unenforceable. [Rudbart, 127 N.J. at 356].
>
>> [I]n determining whether to enforce the terms of a contract of adhesion, [we] look[] not only to the take-it-or-leave-it nature or the standardized form of the document but also to [(1)] the subject matter of the contract, [(2)] the parties' relative bargaining positions, [(3)] the degree of economic compulsion motivating the "adhering" party, and [(4)] the public interests affected by the contract.
>>
>> [Ibid. (alterations in original).]
>
> The Rudbart factors focus on the procedural and substantive aspects of a contract of adhesion in order to determine whether the contract is so oppressive, Martindale, 173 N.J. at 90, or inconsistent with the vindication of public policy, Muhammad, 189 N.J. at

> 25, that it would be unconscionable to permit its enforcement. Courts generally have applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability. See Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 565-66 (Ch. Div. 2002); see also Muhammad, 189 N.J. at 14 n.2 (noting appropriateness of sliding-scale analysis for contracts of adhesion).
>
> [189 N.J. 28, 39-40 (2006).]

The first three Rudbart factors speak to procedural unconscionability, and the last factor speaks to substantive unconscionability. Rodriguez v. Raymours Furniture Co., Inc., 225 N.J. 343, 367 (2016). Procedural unconscionability arises out of defects in the process by which the contract was formed and "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." Id. at 366 (quoting Muhammad, 189 N.J. at 15).

The public interest factor is the most important in determining whether a contract of adhesion is unconscionable. Rudbart, 127 N.J. at 356; see also Muhammad, 189 N.J. at 19. This factor requires the court "to determine whether the effect of the arbitration clause provisions that significantly restrict discovery, limit compensatory damages, and prohibit punitive damages 'shield

defendant[] from compliance with the laws of this State.'" Est. of Ruszala ex rel. Mizerak v. Brookdale Living Cmtys., Inc., 415 N.J. Super. 272, 298 (App. Div. 2010) (quoting Muhammad, 189 N.J. at 19).

We are satisfied the court correctly determined the Arbitration Agreement is a contract of adhesion. It was presented to plaintiff "on a take-it-or-leave-it basis, . . . in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." See Muhammad, 189 N.J. at 15 (quoting Rudbart, 127 N.J. at 353). Defendants do not argue otherwise.

We conclude, however, the record is insufficient to support the court's determination the Arbitration Agreement is unconscionable. A contract of adhesion is not by its nature alone unenforceable. Rudbart, 127 N.J. at 354. Plaintiff bears the burden of proving the defense of unconscionability, Martindale, 173 N.J. at 91, and it calls for a fact-sensitive analysis in each case, Muhammad, 189 N.J. at 16.

As the court aptly noted, "discovery or depositions [may] serve to contradict [p]laintiff's account." And, as plaintiff concedes, "discovery is necessary to uncover" when "[d]efendants determine[d] that [p]laintiff would be terminated." Plaintiff and the court rely heavily on the fact plaintiff was

terminated the day after he signed the Arbitration Agreement. The record, however, is devoid of any indication when the alleged "incident with a civilian while driving a company vehicle" occurred. The timing of that incident may very well be significant. If, for example, the incident occurred after USME requested all employees sign the Arbitration Agreement on November 30, the timing of plaintiff's termination may not weigh as heavily, if at all, in favor of finding unconscionability. Certainly, if the incident occurred on December 13, the day plaintiff was terminated, the timing would be even less significant. By the same token, whether defendants intended to terminate plaintiff before compelling him to sign the Arbitration Agreement as a condition of continued employment may be an important consideration.

Based on the scant record, the court was not in a position to conduct the type of fact-sensitive analysis required to determine unconscionability. That analysis requires the court consider, among other things, "a variety of inadequacies, such as age, literacy, lack of sophistication, . . . bargaining tactics, and the particular setting existing during the contract formation process." Rodriguez, 225 N.J. at 366 (quoting Muhammad, 189 N.J. at 15). Discovery is necessary to permit the court to evaluate all relevant factors.

We add the following additional comments to assist the court on remand. By doing so, we express no opinion on the appropriate resolution of defendants' motion to compel arbitration.

Our Supreme Court has consistently upheld agreements to arbitrate in the employment context, despite the obvious imbalance of power. There is no public policy reason to not enforce properly drafted arbitration agreements in employment contracts. See Garfinkel, 168 N.J. at 135. "Virtually every court that has considered the adhesive effect of arbitration provisions in . . . employment agreements has upheld the arbitration provision contained therein despite potentially unequal bargaining power between employer and employee." Martindale, 173 N.J. at 90. "[I]n New Jersey, continued employment has been found to constitute sufficient consideration to support certain employment-related agreements." Id. at 88.

The court's determination "[p]ublic policy favors allowing [p]laintiff's claims to continue in his forum of choice to be tried by a jury of his peers" is inconsistent with applicable law. It is well-settled there exists a "strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch, 215 N.J. at 186. In addition, parties may agree in a contract to "waive statutory remedies in favor of arbitration," Leodori v. CIGNA Corp., 175 N.J.

293, 300 (2003) (quoting Garfinkel, 168 N.J. at 131), including claims under the NJLAD, Martindale, 173 N.J. at 93-94.

Finally, to the extent court found the Arbitration Agreement is unenforceable simply because it is a contract of adhesion, it was mistaken. A contract of adhesion is not by its nature alone unenforceable. Rudbart, 127 N.J. at 354.

Vacated and remanded for discovery and reconsideration in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division